OSCAR MOHR and another *vs.* MINNESOTA ELEVATOR COMPANY and others.

April 9, 1889.

**Corporation—Liability of Stockholders—Manufacturing Company.—**
Stockholders in corporations cannot exempt themselves from the constitutional rule of personal liability to the amount of their stock, by organizing, in form, under Laws 1873, c. 11, known as the "Manufacturing Corporation Act," and alleging their organizations to be for manufacturing purposes, when it is evident, not only from the articles of association, but from the character of the business actually transacted, that but a trifling part of it is manufacturing, and that the primary object of the organization and existence is the carrying on of business wholly foreign to manufacturing. Following *State* v. *Minn. Thresher Mfg. Co., supra,* p. 213.

**Same—Release to Corporation in Insolvency.—**Assuming that the insolvency law (Laws 1881, c 148) includes and applies to corporations, a release of a debt due from a corporation by its creditor, and a judgment of a court thereon discharging the debtor pursuant to the provisions of said insolvency law, releases and discharges the stockholders in said corporation from the personal liability imposed by section 3, art. 10, of the constitution of the state.

Appeal by plaintiffs and by intervening creditors of the defendant corporation from a judgment of the district court for Wabasha county, and from an order by *Start,* J., (before whom the action was tried, without a jury,) refusing a new trial.

*Wilson & Bowers* and *John M. Gilman,* for appellants.

*W. C. Williston, H. D. Stocker,* and *W. J. Hahn,* for respondents, (stockholders.)

COLLINS, J.  On August 16, 1883, the defendant elevator company became incorporated in form under the provisions of chapter 11, Laws 1873, now found from sections 120–143, inclusive, title 2, c. 34, Gen. St. 1878.  Upon the 2d day of September, 1884, it assigned all of its property for the benefit of its creditors, in the manner prescribed by chapter 148, Laws 1881.  The assignee named in the deed of assignment accepted, took possession of the assets, and entered upon the discharge of his duties.  Early in the year 1885, the original plaintiffs herein commenced this action, which is, according to the allegations of the complaint and as determined by the findings, against all of the stockholders of the corporation, residents of the state or within the jurisdiction of the court, from the day of its crea-·tion to the time of bringing the suit, as well as against the defendant corporation.  It was brought under the provisions of section 17 *et seq.*, c. 76, Gen. St. 1878, and after its commencement, as provided by section 23, several creditors became parties by intervention.  The avowed object of the action is to obtain a personal judgment against these stockholders for a sum equal to the amount of their stock, on the ground that they are liable by virtue of section 3, art. 10, of the constitution, as amended in 1872, which imposes upon each stockholder in a corporation, except those organized for manufacturing or mechanical purposes, a liability to the amount of the stock held or owned by him.  A trial of the issues, by the court without a jury, resulted in findings of fact which are not questioned by either party.  The conclusion of law was for defendants, and from a judgment of dismissal, and for costs against the plaintiffs, they appeal.  It appears from these findings that said plaintiffs and intervenors duly filed with the assignee their claims and demands against the insolvent corporation, and each received a dividend thereon, in common with other creditors; that some time prior to the 29th day of April, 1886, they, and each thereof, duly made and filed in the office of the clerk of the proper district court releases of their respective claims against said corporation, as provided for in chapter 148, *supra;* that upon said day judgment was duly rendered and entered in said insolvency proceedings, adjudging and decreeing a discharge to said defendant corporation of and from all claims and debts and

from each and every of the claims and debts of the plaintiffs and in-
tervenors herein, and on which this action rests, except as they might
be paid in part or in full under the provisions of the statute; which
judgment, the court further finds, is still in full force and effect.    In
reaching the conclusion of law referred to, the court below based its
determination upon a defence common to all of the defendants,
namely, the releases before mentioned and the judgment of the court
thereon, which, assuming (as we do for the purposes of this case)
that the insolvent act of 1881 includes and applies to corporations as
well as natural persons, forever discharged the debts due from the
insolvent to plaintiffs and intervenors.    The court expressly omitted
any consideration of a special defence interposed by two of the de-
fendants, who had, prior to December 1, 1883, but subsequent to the
days that a part, at least, of the indebtedness sued upon had been
incurred, in good faith, in the usual course of business, and without
any intention of defrauding the creditors of said corporation, sold
and transferred the whole of their stock to another of the defendants,
then solvent, which sale and transfer was entered on the books of
said corporation, on the last-named day, in due form.

The court made a copy of the articles of incorporation a part of
its findings, from which it appears that although the elevator com-
pany claimed that it was organized under the law of 1873, relating
to manufacturing corporations, its articles declared the purposes for
which it was to be established to be that of manufacturing flour and
feed; "also that of buying and selling, either on account of such cor-
poration or on commission, and receiving, shipping, and storing of
all kinds of grain, seeds, country and farm produce, lime, cement,
coal, building material, hogs, sheep, horses, cattle, and any and all
other articles of merchandise," and generally to perform and transact
all acts needful or proper for the prosecution of any of said business.
And while the court avoided all expression of opinion in its memo-
randum as to the true corporative character of the elevator company,
its findings in regard to the actual business transacted were full, com-
plete, and to the effect that it engaged principally in storing, buy-
ing, and selling grain, building and operating grain warehouses, and,
as incidental, dealing in coal, lime, and cement; that in fact manu-

facturing formed but an insignificant portion of its real business. Stockholders in corporations cannot bring themselves within the exception to the constitutional rule of personal liability by organizing formally under the act of 1873, or by denominating their organizations to be for manufacturing purposes, when it is apparent, not only from the articles of association, but from the character of the business actually carried on, that the primary object of the organization is not manufacturing, but the transaction of business and the promotion of an enterprise entirely foreign to manufacturing. *State* v. *Minn. Thresher Mfg. Co.*, *supra*, p. 213. It is evident, therefore, that the elevator company existed, as a corporation, by virtue of sections 109–119, inclusive, title 2, *c.* 34, Gen. St. 1878, rather than under the provisions of the sections which immediately follow, being the act of 1873, as claimed by the defendants' counsel. This conclusion inevitably follows from an examination of the articles of incorporation, in connection with the findings of which they are made a part. Not only is the manufacture of flour and feed specified and provided for in these articles, but the receiving, storing, shipping, and dealing in all kinds of merchandise is declared to be within the purpose and design of the incorporators, while the fact appears that the business actually carried on (upon an extensive scale, it seems) was wholly distinct from manufacturing, the latter being a mere trifle in comparison. The stockholders, then,—and we withhold any intimation as to whether any of their number can be excepted or not,—must be held personally liable under the constitution, unless they have been freed from the duty so imposed upon them, by the acts of plaintiffs and intervenors, before referred to, supplemented by the decree of the court.

The obligation relied upon by appellants as still resting upon the defendant stockholders is the creature of the constitution, and has no existence at common law. The responsibility of the stockholders is determined by the fundamental law when they become stockholders. They then agree to become liable, both in a corporate capacity and individually, to all who shall give credit to the corporation. It is true, as suggested by the counsel for appellants, that the individual liability is "like that of partners;" that "the stockholders are liable

*pro tanto,* as if unincorporated," but the debt is not entered into by the stockholders directly or in a personal capacity, either as principals, sureties, or guarantors. As the stockholders really constitute the corporation, its debts are theirs to the extent fixed by the constitution, precisely as the debt of a firm is that of each member of the partnership,—to the extent of his ability to respond. If the firm debt be discharged, the liability of its members as individuals ceases; and it follows that, if the liability of a stockholder is not unlike that of a partner, whatever releases or discharges the corporation must necessarily release and discharge each of the stockholders. These stockholders can only be adjudged liable when, in equitable proceedings prescribed by statute, the corporation itself is found unable to liquidate its indebtedness. If, then, the corporation has no creditors and is not legally indebted, how can it be urged that it is unable to meet and discharge its pecuniary obligations? If the liability is supposed to exist, the remedy is by statute and is exclusive. This was so held in *Allen* v. *Walsh,* 25 Minn. 543, and *Johnson* v. *Fischer,* 30 Minn. 173, (14 N. W. Rep. 799,) in each of which the alleged liability existed by virtue of a statute, instead of by or through the fundamental law. The reasoning, however, is apt, conclusive, and applies here. The statute construed in those cases has been followed by the appellants in this. They seek relief under it, and, if it is not commensurate to the occasion, the action must fail, not because the remedy provided is intrinsically inadequate, but because the appellants have hitherto and voluntarily assumed a position which forbids its invocation. It must be conceded that they once had subsisting and enforceable claims against these stockholders, but these may have been abandoned or destroyed, precisely and as effectually as if they had permitted the statute of limitations to run against them. The vital question is whether the appellants are still creditors of the corporation within the purview of the statute, (section 17, *c.* 76, *supra,*) whose aid they summon, and by which alone their rights must be determined. If they are not creditors, as was held by the court below, they cannot recover of the stockholders. Their chief contention is that the liability of the latter is the same as that of a surety, guarantor, or joint debtor, and that the rules of law which would compel

one or either of these parties to make good a deficiency arising through the inability and insolvency of a principal apply and control the case at bar. Their main argument is devoted to an exhaustive consideration of the rights of creditors as against those who are jointly indebted, or have become sureties, or have guarantied the debts of the insolvent. In so arguing the appellants assume, measurably, that if the stockholders of a corporation cannot be held under circumstances like these, the effect of every judgment decree discharging an insolvent is to release and exempt from further liability that class of debtors mentioned in the preceding paragraph. As the question is not involved here, and the assumption unwarranted, our opinion need not be expressed. We can say, however, in addition to the suggestions before made as to the distinction between the obligations of those who are held simply by the operation of law and those who are bound by contracts personally entered into, that in that class of the latter now under discussion the relation of debtor and creditor is directly created and continuous until the debt is discharged by payment or otherwise. This relation need not necessarily be terminated by a discharge in insolvency of another person, jointly or primarily liable as between the debtors, for the contracts are separate and independent in many respects. The surety or guarantor whose principal has become involved, or the joint debtor who is compelled to pay more than his share of a debt, has the power to take upon himself the entire burden, becoming the creditor in place of the original, and thereafter pursuing a course of action most to his interest, sharing, if he so chooses, in a distribution of an insolvent estate, by participating in the dividends on equal terms with other creditors,— a thing which could not be done by stockholders who had acknowledged and met their liability under the constitution.

A creditor, says Bouvier, is one "who has a right to require the fulfilment of an obligation or contract," and this definition is as complete as any. Unless there be a debtor, one whose duty it is to pay, and of whom the debt can be demanded, there cannot be a creditor to enforce and compel payment. One of these parties cannot have a being without his correspondent, and it would be a most perplexing task should we attempt to sustain an assertion that there still re-

mained a creditor after the debtor, as such, had ceased to exist. In this instance there is no dispute but that the debts were as completely discharged as if paid in full, and the corporative debtor absolutely and unconditionally released from further liability. As the releases and judgment in the insolvency proceedings extinguished the legal obligations against the insolvent, there remains no creditor of the corporation, within the meaning of the statute, who can enforce the liability fixed by the constitution; so that, as the debt against the corporation was extinguished by the releases and judgment, the personal liability of the defendant stockholders was also extinguished. This view is warranted, we think, by an examination of various provisions of the statute, aside from the prominent fact that the rights of creditors of the corporation only are recognized by it. All seem to contemplate that the corporation is still a debtor, and that it shall be made a party, and its assets, if any, taken possession of and distributed under the direction of the court. The proceedings therein specified would prove to be, when followed, in direct conflict with those prescribed by the terms of the insolvency act of 1881. They might be, as is the case here, in different tribunals, and with distinctly different and discordant views, and but one of these methods of procedure could be followed without great contention and clashing between the courts and their officers. The other would have to be abandoned. Our conclusions are also sustained by the reasoning in *Matter of Coates,* 3 Abb. Dec. 231, cited with approval in *Matter of Bonnaffe,* 23 N. Y. 169, 185; *Ocean Nat. Bank* v. *Olcott,* 46 N. Y. 12; *Ansonia Brass & Copper Co.* v. *New Lamp-Chimney Co.,* 53 N. Y. 123, (also reported in 91 U. S. 656;) *Jones* v. *Barlow,* 62 N. Y. 202; *Young* v. *Rosenbaum,* 39 Cal. 646.

Order and judgment affirmed.