NICOLLET NATIONAL BANK v. FRISK–TURNER COMPANY and Others.[1]

February 3, 1898.

Nos. 10,827—(250).

Manufacturing Corporation—Articles of Incorporation—Construction —Business Incidental to Manufacture of Clothing.

The articles of association of a corporation stated that "its business shall be the manufacturing of clothing of every description, and the sale of clothing so manufactured, and the transaction of all other business necessary and incidental to such manufacture and sale of clothing." Held, that it was a corporation organized for the purpose of carrying on a manufacturing business, within the meaning of article 10, § 3, of the constitution of this state.

Same — Business Not Authorized by Articles — Liability of Stockholders.

Also, that the mere fact that the corporation engaged in some business not authorized by its articles of association did not render its stockholders

[1] Reported in 74 N. W. 160.

liable, as such, for corporate debts, under the section of the constitution referred to.

In an action in the district court for Hennepin county against the Frisk-Turner Company and all its stockholders, to enforce the individual liability of the stockholders for debts of the company, the plaintiff appealed from an order of Johnson, J., denying its motion for a new trial after a dismissal of the action at the close of plaintiff's testimony. Affirmed.

*A. B. Jackson*, for appellant.

The articles of incorporation assert the right to transact all business necessary and incidental, not merely to the manufacture, but to the sale of clothing, and their scope is broad enough to permit, and they did permit, mercantile as well as manufacturing business, and the case falls, upon the articles, entirely within the rule laid down in Arthur v. Willius, 44 Minn. 409; Densmore v. Shepard, 46 Minn. 54; First v. Winona, 58 Minn. 167; Commercial v. Azotine, 66 Minn. 413; Anchor v. Columbia, 61 Minn. 510; St. Paul v. Minneapolis, 62 Minn. 448; State v. Minnesota, 40 Minn. 213; Mohr v. Minnesota, 40 Minn. 343. The question of ultra vires can now in general be raised only in proceedings by the state, or in a suit by a stockholder in advance, to enjoin the alleged proposed excess of the charter powers. Farwell v. Wolf, 96 Wis. 10; Stewart v. Erie, 17 Minn. 348 (372); 2 Beach, Priv. Corp. §§ 431, 432, 433; American v. Gluck, 68 Minn. 129; Hause v. Mannheimer, 67 Minn. 194. Where the company has received the benefits of the transaction the defense of ultra vires is not open to it. White v. Marquardt, 105 Iowa, 145; White v. Greene, 105 Iowa, 170.

*Koon, Whelan & Bennett, Keith, Evans, Thompson & Fairchild, Wilson & Van Derlip, C. J. Rockwood* and *H. M. Farnam*, for respondents.

The articles of incorporation do not permit the transaction of other business except such as is necessary and incidental, not to the manufacture and sale of clothing in general, but to the manufacture of clothing by the defendant company, and to the sale of such clothing as it has actually manufactured, and it is well settled that by carrying on such incidental business a corporation does not cease to be a manufacturing corporation within the meaning of

the constitution exempting the stockholders of manufacturing corporations from double liability. State v. Minnesota, 40 Minn. 213; Arthur v. Willius, 44 Minn. 409; St. Paul v. Minneapolis, 62 Minn. 448; Hastings v. Iron Range, 65 Minn. 28.

The sale of children's clothing was necessary and incidental to the business done by the defendant company. The following cases furnish examples of what is fairly to be regarded as reasonably incidental to a manufacturing business: Cowling v. Zenith, 65 Minn. 263; Anderson v. Anderson, 65 Minn. 281; First v. Winona, 58 Minn. 167; Madison v. Watertown, 5 Wis. 173; Morville v. American, 123 Mass. 129; Danchy v. Brown, 24 Vt. 197; Searight v. Payne, 6 Lea, 283; Chester v. Dewey, 16 Mass. 94; Getty v. Barnes, 40 Kan. 281; Lyde v. Eastern, 36 Beav. 10, 16; Shawmut v. Plattsburgh, 31 Vt. 491; Wheeler v. San Francisco, 31 Cal. 46; Buffett v. Troy, 40 N. Y. 168; Perkins v. Portland, 47 Me. 573; Mahoney v. Butte, 19 Mont. 377; Dupee v. Boston, 114 Mass. 37; Brown v. Winnisimmet, 11 Allen, 326; Gruber v. Washington, 92 N. C. 1; Vandall v. South, 40 Cal. 83; Fort v. Smith, 151 U. S. 294; Tod v. Kentucky, 57 Fed. 47; B. S. Green v. Blodgett, 159 Ill. 169; Green v. Union, 107 U. S. 98; Holmes v. Willard, 125 N. Y. 75; Lyndesborough v. Massachusetts, 111 Mass. 315. If the buying and selling of children's clothing was carried on in a manner not incidental to the company's business of manufacturing clothing, these acts were ultra vires, the shareholders are not liable for any obligations incurred in their performance. Corporations themselves are held liable on executed contracts where they have received and retained the fruits of them, whether intra vires or ultra vires, but stockholders have never been held liable upon contracts of the company which were ultra vires. Langan v. Iowa, 49 Iowa, 317; Second v. Hall, 35 Oh. St. 158.

BUCK, J.

The plaintiff bank recovered a judgment against the Frisk-Turner Company on July 28, 1896, for the sum of $14,443.16, on which an execution was returned unsatisfied. On July 24, 1896, said company made an assignment, under the insolvency laws of this state, to Willard T. Atwater, one of these defendants. The total value of

the assets which came into the assignee's possession and control did not exceed $3,000. The plaintiff brought this action, by supplemental complaint, to enforce the individual liability of the shareholders of the Frisk-Turner Company. The receiver of the City Bank of Minneapolis filed an intervening complaint, asking permission to participate in the sum recovered on a claim which said City Bank had against the Frisk-Turner Company.

The question involved in this issue is whether the stockholders of the Frisk-Turner Company are liable for the plaintiff's debt evidenced by the judgment so rendered against it. The company was organized as a corporation under the laws of this state, and the material article of the corporation is article 1, which reads as follows:

"The name of the corporation shall be Frisk-Turner Company, and the principal place of transacting its business shall be at Minneapolis, in the state of Minnesota, and its business shall be the manufacturing of clothing of every description, and the sale of clothing so manufactured, and the transaction of all other business necessary and incidental to such manufacture and sale of clothing."

The corporation, after publishing its articles and completing its organization, began active business November 1, 1890. In addition to its own manufacture of men's and youth's clothing, and the sale thereof, it, as part of its business, bought, handled and sold large invoices of children's manufactured ready-made clothing. These ready-made goods were purchased and handled by defendant in the ordinary course of jobbing business. The ordinary jobber's profit was added to the cost price, and the goods were then put on the market for sale. Defendant's salesmen solicited orders for them, as well as for the goods manufactured by defendant, and sold these ready-made goods either independently and separate from the goods of defendant's manufacture, or in conjunction with the latter, as customers might desire. They were not bought to fill orders previously received from customers, but were bought and sold, for profit, independently of the goods manufactured by defendant. The total sales made by defendant company while engaged in business aggregated about $1,000,000. The sales of children's clothing bought by

defendant ready-made aggregated from five to seven per cent. of the total volume of sales, or from $50,000 to $70,000.

The defendants contend that, under these articles of incorpora-tion, they are authorized to manufacture in part, and buy in part from other manufacturers, and to sell all the stock so acquired, as ordinary jobbers or wholesalers, without incurring the sharehold-ers' liability which would have attached if they had declared these double purposes plainly in their articles.   On the other hand, plain-tiff alleges that this suit is brought upon the ground that the cor-poration was in fact organized for mercantile as well as manufac-turing purposes, and depends wholly on the provisions of the consti-tution, and that any competent evidence to show that the defendant company was not organized exclusively for manufacturing pur-poses, so as to come within the exception to that provision, was admissible.

The constitution  (article 10, § 3), provides that

"Each stockholder in any corporation, (excepting those organized for the purpose of carrying on any kind of manufacturing or me-chanical business), shall be liable to the amount of stock held or owned by him."

A corporation, being the mere creature of the law, "possesses only those properties which the charter of its creation confers upon it, either expressly, or as incidental to its very existence."   Mar-shall, C. J., in Trustees v. Woodward, 4 Wheat. 518–636.   The arti-cles of incorporation in question do not authorize the Frisk-Turner Company to buy and sell clothing manufactured by concerns other than itself.   Such business would be a purely "mercantile busi-ness," and the latter words and "manufacturing or mechanical busi-ness" are not interchangeable terms.   Both kinds of business might, under the constitution and laws, be carried on in conjunction by one corporation, if the articles so provided; but the liabilities of the stockholders would in such case be different from those of a corporation organized to carry on an exclusively manufacturing or mechanical business, under article 10, § 3, of the constitution.

In the phrase, "the transaction of all other business necessary and incidental to such manufacture and sale of clothing," we find

71 M.—27

no warrant for such corporation including in its business a purely mercantile business, such as buying and selling ready-made clothing.

"An incidental power is one that is directly and immediately appropriate to the execution of the specific power granted, and not one that has a slight or remote relation to it." Hood v. New York, 22 Conn. 1, 16.

The exercise of a power which might be beneficial to the principal business is not necessarily incident to it. It might be the exercise of a power inhibited by the constitution, or one not warranted by law, while the principal business might be permitted by both. The constitution exempts the stockholders in any corporation carrying on a manufacturing or mechanical business from liability to the amount of the stock held or owned by him, and its purpose is self-evident. "That purpose was to encourage manufacturing enterprises, by exempting those investing their capital in that business from personal liability." State v. Minnesota, 40 Minn. 213, 222, 41 N. W. 1020.

In this case, if the buying and selling of ready-made clothing by virtue of its articles of incorporation is authorized, under the guise of being incidental to the manufacturing and selling of its own manufactured clothing, it is difficult to see just where the partition line may be found between the principal business and that which is incidental to it. If the buying and selling of $50,000 to $70,000 of ready-made clothing in a business of $1,000,000 is only incidental, who shall determine whether the buying and selling of half a million dollars worth, more or less, of ready-made clothing, is not also merely incidental. If the directors, at their option or election, can thus shift the amount and dividing line, that which is claimed to be incidental in the articles of incorporation will become the principal, and the original principal business merely incidental.

The liability of stockholders cannot rest upon any such uncertain or transitory basis. The evidence of defendants tending to show that the buying and selling of children's ready-made clothing by the corporation was necessary to the successful manufacture and sale of its own clothing cannot change the legal effect of the language used in its articles of incorporation; and the result of such busi-

ness, ending in insolvency, does not carry a very strong conviction that even the buying and selling of ready-made clothing was a necessary incident to the successful manufacture of its own clothing.

The sale of its own manufactured goods is within the constitutional provision conferring the power to carry on the manufacturing business, because such business would become futile if such products could not be disposed of with profit. So, also, buying the raw material for the purpose of manufacturing it into articles of commerce and selling the same would be within the power conferred by the constitutional provision in question, and its articles of incorporation. It would enable it to carry on the manufacturing business contemplated by the very language of the constitution itself. But, as the buying and selling of ready-made clothing is purely a mercantile business, it is unauthorized by the articles of incorporation.

This brings us to the question whether the fact that the corporation exceeded its powers, in buying and selling children's clothing already manufactured, coupled with the fact that several of the incorporators, with knowledge thereof on the part of all the directors and stockholders, after the signing of the articles, and before the commencement of the manufacturing business, purchased several hundred dollars worth of manufactured children's clothing, with intent to sell the same, and employed salesmen for that purpose, rendered the individual stockholders liable.

While the evidence was excluded as to the acts of said incorporators, we assume that such would have been the proven fact, had not the objection to its admission been sustained. The buying and selling such ready-made clothing by the corporation, to the amount of $50,000 to $70,000, was admitted, and that it was carried on for a series of years, necessarily requiring the employment of clerks and salesmen. Hence we feel justified in assuming, for the purpose of this decision, that the facts offered to be proven were true. But do these facts alter the liability of the stockholders?

This corporation was evidently organized under Laws 1873, c. 11, and subsequent amendments; being the same as incorporated into

G. S. 1894, § 2805, and subsequent sections upon the same subject. Section 2807 of this statute provides that

"The purpose for which every such corporation shall be established shall be distinctly and definitely specified by the stockholders in their articles of association, and it shall not be lawful for said corporation to direct its operations or appropriate its funds to any other purpose."

The articles in question were duly recorded in the office of the register of deeds of Hennepin county, where the corporation was located, and filed and recorded in the office of the secretary of state, and published in a public newspaper, as required by law. Strangers or third persons are presumed to know the law of the land, and are bound, when dealing with corporations, to know the powers conferred by their charters. Kraniger v. Peoples, 60 Minn. 94, 61 N. W. 904. The act of the corporation in buying and selling ready-made clothing was not only a direct violation of the law above quoted, but a violation of the articles of its incorporation. But this violation was well known to the plaintiff, from actual knowledge received as to what the corporation was doing and intended to do, as well as from its presumptive knowledge of the contents of the articles so recorded and published, and the law above quoted. The representation of the incorporators was not made upon an apparent authority based upon private papers, to which strangers had no access, but that they were buying and selling, and intended to continue to buy and sell, ready-made clothing in violation of law and their articles of incorporation, which plaintiff, knowing such acts to be unlawful, had no right to rely upon.

What the result would be if it appeared that the whole scheme was a fraudulent contrivance on the part of the corporators to evade their constitutional liability, we need not consider. There were not the slightest indicia of fraud in the whole transaction. It was not alleged or proved, and was specifically disclaimed by plaintiff's counsel on the argument of this case. Nor were such representations the acts of the corporation. The charter was the measure of its power as to all parties dealing with it. At least, in the absence of such fraudulent attempt to evade the law, the articles of incorporation are themselves the sole criterion to ascertain the pur-

pose for which the corporation was formed. But the mere fact that, as in this case, it had done some business outside that authorized by its articles, does not render the stockholders, as such, liable for its corporate debts, to the amount of stock owned or held by them.

There are no authorities in this court to the contrary of the views herein expressed. In the case of Hastings v. Iron Range, 65 Minn. 28, 67 N. W. 652, it was held that the general nature of the business of the corporation, as defined by its articles of incorporation, was the manufacture or brewing of lager beer, and selling and disposing of the same, together with such other business as might be incidental thereto, and hence, that it was exclusively a manufacturing corporation, and its stockholders not liable for the corporate debts, beyond the amount due on their stock subscription. The liability of the corporation for dealing in business outside of that authorized by its articles was not involved. First v. Winona, 58 Minn. 167, 59 N. W. 997, was a case where it appeared from its articles that it was not only formed for the manufacture and sale of farm implements, but for the purchase and sale of others already manufactured; and it was held that it was not organized for the purpose of carrying on an exclusively manufacturing business, and its stockholders were held liable for its corporate debts to the amount of their stock. Densmore v. Shepard, 46 Minn. 54, 48 N. W. 528, 681, involved the construction of articles which provided that the general nature of the business was to be

" 'The manufacture and sale of lime, quarrying stone for making lime and for building and other purposes, digging and selling sand, together with the buying and selling of lime, hair, sand, cement, and like articles, and other building materials, and the doing of all things necessary to carry on said business' ";

and it was held that it was not organized exclusively for the purpose of carrying on a manufacturing business. In other cases where the same rule was applied, the articles themselves authorized the carrying on or doing some kind of independent business in addition to that of manufacturing, and such cases have no controlling influence on the question here involved. The power to do such independent business was there given by the articles, and, in going beyond the manufacturing business, the corporation still kept

within the limits of its charter; but in so doing the stockholders became liable, not because they had violated the law, but because their articles authorized the corporation to carry on a business other than that of manufacturing, though in strict compliance with that authorized by the articles themselves. The distinction is obvious.

What other remedies creditors may have against those in the management or control of the affairs of a manufacturing corporation, who have extended, or authorized the extension of, its business beyond what was authorized by its articles, is a question not now before us.

Order affirmed.