# IN RE DISSOLUTION OF RED RIVER VALLEY LIVESTOCK ASSOCIATION.
## C. U. BRANTNER AND OTHERS v. RED RIVER VALLEY LIVESTOCK ASSOCIATION.[1]

December 7, 1951.

No. 35,612.

*G. L. Dosland,* for appellants.
*L. A. Erickson* and *H. O. Chommie,* for respondent.

MAGNEY, JUSTICE.

The Red River Valley Livestock Association is a corporation organized October 11, 1918, under the laws of the state of Minnesota. The articles of incorporation were filed in the office of the secretary of state. The period of duration was fixed at 30 years in the articles. Petitioners, 17 in number, are shareholders and stockholders of the

---

[1]Reported in 50 N. W. (2d) 287.

association. They petitioned the court for an order dissolving the corporation on the ground that under the 30-year limitation in the articles the corporation had ceased to exist and had no authority to continue to do business. They asked that a receiver be appointed and that the assets of the corporation, estimated at $60,000, be distributed to the stockholders thereof according to their respective interests therein. At the hearing on the petition, the corporation appeared specially and moved for dismissal of the petition on the ground that the court had no jurisdiction to act in the premises. The court granted the motion on the ground stated, and petitioners appeal.

It is conceded by petitioners that this proceeding is one for involuntary dissolution brought under the provisions of M. S. A. c. 301, with special reference to §§ 301.49, 301.50, and 301.51. Section 301.49, so far as here applicable, provides:

"A corporation may be dissolved by involuntary proceedings in the discretion of the court when it is made to appear:

\* \* \* \* \*

"(5) That the period for which the corporation was formed has terminated without extension."

The court in this instance did not exercise its discretion, but based its order on the ground that it had no jurisdiction. Section 301.50 reads:

"A petition for involuntary dissolution of a corporation may be filed by:

"(1) A shareholder; \* \* \*"

The above sections are a part of c. 301, which, as stated in § 301.01, "may be cited as the Minnesota business corporation act." The purpose of incorporation and the qualifications of incorporation under this act are set out in § 301.03 as follows:

"Three or more natural persons of full age may form a corporation under sections 301.01 to 301.61 for any lawful business purposes; provided \* \* \* that where other statutes prescribe a special

procedure for the incorporation of designated classes of corporations, such corporations shall be formed under such statutes and not under these sections."

The trial court held that the association was not incorporated as a business corporation, but as a nonprofit corporation, and that the provisions of the Minnesota business corporation act relative to involuntary dissolution of corporations did not apply.

■ Article II of the articles of incorporation provides:

"The object and general nature of the business of this corporation shall be the improving of live stock and to aid, assist and encourage the raising, improving, exhibiting, selling and developing of live stock and poultry, particularly within the counties of Kittson, Becker, Red Lake, Pennington, Mahnomen, Marshall, Norman, Roseau, Clay, Polk, Clearwater, Ottertail and Wilkin, in the State of Minnesota, and the promotion of the general welfare of said territory, and the buying, selling, holding, leasing and controlling of such property as may be necessary and incidental to such purposes. The corporation shall be non-political *and shall engage in no business for pecuniary profit."* (Italics supplied.)

The corporation was indexed in the office of the secretary of state as a business corporation, and the fee paid by the incorporators was the fee required of a business corporation. No amendments to or changes in the articles of incorporation have been made since its organization.

Testimony of the president and secretary of the association tended to show that there had been no profit-making activity by the corporation; that it had never paid dividends to its members; that its main activities were the sponsoring of a winter show, livestock sales, and exhibitions; that it was the recipient of substantial gifts; and that it had received biennial grants from the state legislature. The association has 2,500 members, and 2,875 ten-dollar certificates have been issued. Some members have more than one certificate, but no member has more than one vote.

By the language used in the purpose clause of its articles of incorporation, the activities of the corporation are not limited to livestock and poultry *owned* by the stockholders or members of the corporation. It is evident that the purpose of the corporation is to improve livestock *generally* in the area involved, to encourage all to raise better stock, to improve the marketing methods of stock raisers, and in general to stimulate interest in better livestock and better livestock marketing. The assistance and encouragement, which is the purpose of the corporation, is directed toward that industry in the entire 13-county area. The statement of specific purposes is followed by a broad summary statement, namely, "the promotion of the general welfare of said territory, * * *."

We have quoted the paragraph of the articles of incorporation which sets out the purpose of the corporation with some comment on such purposes, together with some facts relative to its activities. With that background, we must proceed to determine whether the court was in error in holding that the corporation was not a business corporation and therefore that M. S. A. 301.49, 301.50, and 301.51 had no application to a petition by minority stockholders for the involuntary dissolution of the corporation. Since the association by its articles was prohibited from engaging in any business for pecuniary profit, it is obvious that it could not properly be incorporated under the business corporation act. The making of pecuniary profit is the paramount purpose of such corporations. The business corporation act clearly is aimed at industrial and commercial corporations organized for profit. Detailed provisions concerning dividends and rights of minority stockholders are unnecessary if applied to nonprofit corporations. The purpose to exclude such corporations is indicated by the provisions of § 301.03, by the detailed provisions of c. 309, and by other chapters relating to cemetery corporations, chambers of commerce, boards of trade, and others. The purpose of the association here is more in line with the kind of a corporation provided for in § 309.01, which reads:

"Any three or more persons may form a corporation for any one or more of the following purposes: religious, social, moral, educa-

tional, scientific, medical, surgical, benevolent, charitable, fraternal, or reformatory, * * *."

The purpose of this association, as detailed in its articles of incorporation, places it well within the category of corporations organized for educational purposes and, without too much stretching of the meaning of words, for scientific purposes. Section 309.02 provides a special procedure for the incorporation of corporations for purposes set out in § 309.01.

We are not required to analyze former or present statutes to determine under what statute a corporation with purposes such as are expressed in the instant articles of incorporation could have been incorporated in 1918 or could now be incorporated. Nor is it required to determine under what statutes the association was incorporated or attempted to be incorporated. It must be conceded that the articles in question are not the result of good legal art or craftsmanship.

If we determine that a corporation with purposes such as are detailed in the articles here could not be incorporated as a business corporation under the business corporation act (M. S. A. c. 301), it follows that such corporation could not be involuntarily dissolved under the procedure set up in §§ 301.49, 301.50, and 301.51, which procedure applies only to corporations organized or coming under the business corporation act.

■ Where the nature or status of a corporation is in question, the objects and purposes stated in its articles of incorporation are controlling. Minneapolis & St. Paul Suburban Ry. Co. v. Manitou Forest Syndicate, 101 Minn. 132, 112 N. W. 13; Kremer v. Tellin, 154 Minn. 267, 191 N. W. 735; Phelps v. Consolidated V. & E. Co. 157 Minn. 209, 195 N. W. 923. In State ex rel. Clapp v. Minnesota Thresher Mfg. Co. 40 Minn. 213, 222, 41 N. W. 1020, 1023, 3 L. R. A. 510, Mr. Justice Mitchell stated:

"The articles of association state that the corporation was formed under the act of 1873 relating to manufacturing corporations, but this does not make it so. To determine its actual character, we

must look to the objects of its formation, and the nature of its business, as stated in the articles themselves. It cannot be made one kind of corporation merely by labelling it such, if its declared objects and purposes show it to be something else."

Again, in International Boom Co. v. Rainy Lake River Boom Corp. 97 Minn. 513, 107 N. W. 735, we reiterated this holding.

The articles of incorporation here were received in evidence. After such receipt, no testimony could possibly change the wording of them; consequently it could not change the nature or status of the association: There is therefore no merit in petitioners' contention that the court erred in refusing to receive further evidence showing the activities of the corporation, which petitioners claim made the association a business corporation operated for profit, and thus covered by the provisions of c. 301. If a corporation exceeds the authority given it by the statutes and its articles of incorporation, there exist legal procedures under which the situation may be remedied.

The court ruled correctly when it held that §§ 301.49, 301.50, and 301.51, under which petitioners were attempting to dissolve this corporation by involuntary proceedings, did not apply, and that the court was without jurisdiction to act in the matter.

Orders affirmed.

MR. JUSTICE KNUTSON took no part in the consideration or decision of this case.