**STATE of Minnesota, by its Attorney General, Hubert H. HUMPHREY, III, Appellant,**

v.

**DELANO COMMUNITY DEVELOPMENT CORPORATION, Respondent.**

No. C6–96–1376.

Court of Appeals of Minnesota.

Dec. 17, 1996.

Hubert H. Humphrey III, Attorney General, Cecilia Krettek Morrow, Assistant Attorney General, St. Paul, for Appellant.

Patrick J. Neaton, Chamberlain, Neaton & Johnson, Wayzata, for Respondent.

Considered and decided by KLAPHAKE, P.J., and SCHUMACHER and AMUNDSON, JJ.

## OPINION

SCHUMACHER, Judge.

The State of Minnesota by its attorney general appeals from summary judgment entered in favor of respondent Delano Community Development Corporation. Because there was no genuine issue of disputed fact and the district court correctly applied the law, we affirm.

## FACTS

In early 1966, a group of Delano city residents agreed to take steps to promote economic development in and around their city. Specifically, they had in mind funding and promoting a nursing home. In order to take advantage of aid available through the Small Business Administration (SBA) for community development, they formed Delano Community Development under the then-Minnesota Business Corporation Act, Minn.Stat. ch. 301 (1965). SBA regulations allowed any corporation, profit or nonprofit, to take advantage of the loans as long as the corporation's "primary objective" was benefiting the community rather than producing monetary profits to its shareholders or members. *See* 13 C.F.R. § 108.2(d)(2) (1963).

To capitalize the corporation, the incorporators invested $50 each in 50 block shares of common stock. The remaining 50 block shares of common stock were sold primarily to Delano-area residents at the same price.

The Delano Community Development Articles of Incorporation filed with the Minnesota Secretary of State contained the following purpose clause:

> The general purpose and nature of its business shall be for the purpose of furthering the economic development of Delano and vicinity; to aid, assist and promote the growth, expansion and development of business concerns, including small business concerns in said area; to encourage and assist in the location of new business and industry, rehabilitate and assist existing business firms and industry in said area; to accomplish these purposes by making plant and other facilities available to all such business concerns through lease or other means and thereby to contribute to the economic well-being of the area as measured by increased employment, payroll, business volume and corresponding factors rather than monetary profits to the shareholders. Any monetary profits or other benefits which flow to shareholders shall be merely incidental thereto.

In conformance with this clause, Delano Community Development began its first project, the 66-bed Delano Manor Nursing Home, and then its second project, a new manufacturing facility for Air Control Products. In 1981, Delano Community Development took on another project, the Delano Industrial Park, which involved the purchase of 70 acres for development.

Delano Community Development never hired employees, paid compensation to officers and directors, or issued dividends to shareholders. Nevertheless, as a business corporation, it paid state and federal income taxes on real estate gains. In 1991, to avoid further income tax liability on future land sales, Delano Community Development sponsored and paid for the incorporation of Economic Development Corporation of Delano, a Minnesota nonprofit corporation and tax exempt organization under 26 U.S.C. § 501(c)(4) (1988) with the same purposes as Delano Community Development. Delano Community Development shareholders, however, voted not to fund Economic Development with Delano Community Development assets, and Economic Development remains unfunded and inactive.

On October 7, 1994, Delano Community Development notified the attorney general that it intended to dissolve and distribute its assets of approximately $100,000 in cash to its shareholders. The attorney general responded that distribution of the assets must be consistent with the corporation's charitable purpose. Thereafter, Delano Community Development shareholders voted to amend the corporate articles of incorporation to state a "general business" purpose and have proceeded to conduct Delano Community Development's business as usual. Delano Community Development has not yet filed the amended purpose clause with the secretary of state but has withdrawn its notice of intent to dissolve.

On June 13, 1995, the attorney general commenced this declaratory judgment action seeking an order holding Delano Community Development's assets in trust for the purpose of the economic development of Delano and disallowing distribution of its assets to its shareholders. On cross-motions for summary judgment, the district court dismissed the complaint and entered judgment for Delano Community Development. The attorney general appeals.

## ISSUE

Did the district court erroneously conclude that Delano Community Development is a Minnesota business corporation?

## ANALYSIS

The sole issue before the district court and now this court is the corporate status of Delano Community Development. The attorney general contends that Delano Community Development is a charitable trust that must use its assets for the economic development and well-being of the Delano area. Delano Community Development contends that it is a for-profit business corporation whose assets belong to its shareholders.

■ The nature and status of a corporation are determined by the corporate articles of incorporation. *In re Red River Valley Livestock Ass'n*, 235 Minn. 267, 271, 50 N.W.2d 287, 289 (1951). The incorporator's choice of a particular statutory framework for incorporation is not dispositive; the corporation's declared objects and purposes are determinative. *State v. Minnesota Thresher Mfg. Co.*, 40 Minn. 213, 222, 41 N.W. 1020, 1023 (1889).

■ The rules applicable in the construction and interpretation of other contracts or writings apply to the articles of incorporation. *Senour Mfg. Co. v. Church Paint & Mfg. Co.*, 81 Minn. 294, 298, 84 N.W. 109, 110 (1900), *cited in* 1A William Meade Fletcher, *Fletcher Cyclopedia of the Law of Private Corporations* § 100, at 108 n. 5 (perm.ed.rev.vol. 1993). Therefore, unless there is ambiguity in the language of the articles, the issue of construction and effect of the articles is a question of law for the

court. *See Turner v. Alpha Phi Sorority House*, 276 N.W.2d 63, 66 (Minn.1979).

■ We see no ambiguity in the language of the articles of incorporation. Delano Community Development's articles do not prohibit shareholders from taking monetary profits. Similarly, no language in the articles prevents the corporation from engaging in business for pecuniary profit. The incorporators could have clearly expressed such an intention. *See, e.g., Red River*, 235 Minn. at 269, 50 N.W.2d at 288 (articles stating: "The corporation * * * shall engage in no business for pecuniary profit."). Absent clear language to this effect, this court must not imply it. *See Weiss v. City of St. Paul*, 211 Minn. 170, 174, 300 N.W. 795, 797 (1941) ("expressed prevails over what might otherwise be implied"). The articles clearly emphasize that the primary corporate objective is the economic development of the Delano community. They also recognize that "monetary profits or other benefits" will result as a consequence. As long as the profits or benefits are incidental to the primary purpose of Delano's economic development, the distribution of them to shareholders complies with the corporate purpose.

As this appeal raises only the legal question of construing the purpose clause of Delano Community Development's articles of incorporation, there are no disputed issues of material fact. *See State v. French*, 460 N.W.2d 2, 4 (Minn.1990) (standard of review on appeal from summary judgment is whether there are any genuine issues of material fact or errors in district court's application of law). Because we conclude, as did the trial court, that Delano Community Development is a business corporation subject to the Minnesota Business Corporation Act, Minn. Stat. ch. 302A (1996), dismissal of the attorney general's complaint was proper. *See* Minn.Stat. § 302A.021, subd. 2 (1996) (grandfathering in business corporations formed under Minn.Stat. ch. 301).

■ The attorney general also moved this court to strike documents included in Delano Community Development's appendix that were not part of the trial court record. Those documents at Respondent's Appendix,

pages 1, 28–36, and 37, were not part of the trial court record and, therefore, are stricken. *See Cressy v. Grassmann*, 536 N.W.2d 39, 43 (Minn.App.1995), *review denied* (Minn. Sept. 28, 1995).

## DECISION

The attorney general has not demonstrated that the district court erred in its conclusion that Delano Community Development is a Minnesota business corporation subject to the Minnesota Business Corporation Act.

**Affirmed; motion granted.**

KLAPHAKE, Judge (dissenting).

I respectfully dissent. Although I agree with the majority on the legal principles, I disagree with its application of these principles and conclude that DCDC's declared purpose and conduct shows that it is a not-for-profit corporation.

*In re Red River Valley Livestock Ass'n*, 235 Minn. 267, 271, 50 N.W.2d 287, 289 (1951) reaffirmed that the key to determining a corporation's nature and status is its articles of incorporation. Read in their entirety,[1] DCDC's articles unambiguously identify the corporate purpose and intended beneficiaries: to promote the economic well-being of the City of Delano and vicinity. *See, e.g., Attinson v. Consumer–Farmer Milk Coop.*, 197 Misc. 336, 94 N.Y.S.2d 891, 893 (1950) (purpose to organize farmers and consumers for cooperative distribution of milk and to serve economic welfare of members and public). The class of intended beneficiaries is similarly unambiguously identified: the residents of the City of Delano. *See Longcor v. City of Red Wing*, 206 Minn. 627, 635, 289 N.W. 570, 574 (1940) (in contrast to specific individuals benefitting from private trust, beneficiaries of charitable trust are "a large shifting class of the public"). By expressly contrasting this purpose and broad class of beneficiaries with the conventional "monetary profits to the shareholders" of a business corporation, the purpose clause further

distinguishes DCDC as a not-for-profit corporation.

While it is true that the incorporators could have expressly prohibited all profit-making activity, as in *Red River*, permitting *incidental* profit-making does not create a for-profit corporation. *See Nicollet Nat'l Bank v. Frisk–Turner Co.*, 71 Minn. 413, 418, 74 N.W. 160, 162 (1898) ("An incidental power is one that is directly and immediately appropriate to the execution of the specific power granted") Economic development of a city for the city's welfare necessarily confers a benefit, and very possibly a financial benefit, on the city's residents. As long as the benefits flowing to the shareholders are the same as those flowing to the general public, the purpose is consistent with a non-profit corporation. *Cf. State v. North Star Research & Dev. Inst.*, 294 Minn. 56, 77, 200 N.W.2d 410, 423 (1972) (contributors to non-profit hospital may use hospital without depriving hospital of nonprofit status). By expressly limiting "any monetary profits or other benefits" to shareholders to those "merely incidental" to the overall economic development of the city, city residents could participate in DCDC without jeopardizing its primary goal of promoting the economic well-being of the entire community.

Assuming some ambiguity as to the corporate purpose exists, we look beyond the articles of incorporation to determine the intent of the articles. *See, e.g., Mohr v. Minnesota Elevator Co.*, 40 Minn. 343, 346, 41 N.W. 1074, 1075 (1889). The abundant evidence of DCDC's corporate actions is consistent with not-for-profit status. Corporate documents reveal the following: (1) the shareholders never received dividends, and (2) shareholders and officers received no compensation for their substantial contributions of time and services. It is undisputed that DCDC shares were always purchased and transferred in the original 50–share blocks at the original price of $1.00 per share. Additionally, there is no evidence that the corporation was engaged in profit-making. It was only after

1. Only the purpose clause in the articles purports to address the corporate purpose or to otherwise restrict or define the expressed corporate purpose. *See generally* 1A William Meade Fletcher, *Fletcher Cyclopedia of the Law of Private Corporations* § 100, at 107 (perm.ed.rev.vol. 1993).

some 25 years of consistent [2] charitable activity that anyone questioned DCDC's corporate status. Only then, with $100,000 in cash available, did the shareholders veto the directors' resolution to contribute DCDC's assets to a newly-organized non-profit corporation and vote to amend the purpose clause to state "general business" only. At best, these actions were efforts made to avoid the consequences of the prior not-for-profit actions.

In short, a corporation "cannot be made one kind of corporation merely by labeling it such, if its declared objects and purposes show it to be something else." *State ex rel. Clapp v. Thresher Mfg. Co.*, 40 Minn. 213, 222, 41 N.W. 1020, 1023 (1889). Here, the forprofit form of the corporation is inconsistent with its not-for-profit purpose and actions.

Accordingly, I would reverse and order summary judgment imposing a trust status on the corporation's assets.

2. DCDC paid nominal income taxes during its first 25 years. This was consistent with its formation under Minn.Stat. ch. 301. In 1991, when greater income taxes were anticipated, the board of directors took steps to avoid the tax by creating another nonprofit corporation called the Economic Development Corporation of Delano. Payment of taxes, however, does not require a holding of for-profit status. *See, e.g., North Star,* 294 Minn. at 81, 200 N.W.2d at 425 (reversing tax judgment on non-profit corporation).