WESTERN AREA BUSINESS AND CIVIC CLUB, Gary-New Duluth Community Club, Riverside Community Club, William R. Benson, Morgan Park All School Reunion Committee, Western Community Council, Fond du Lac Community Club, Ray Morrison, Ray D. Rizzi, Mary E. Hedeen, Wayne Shinn, Caryl J. Turcott, Steve J. Balach, Carla Rose Skull, Stowe Elementary Parent-Teachers Association, Lyle Lund, Morgan Park Parent-Teachers-Student Association, Donald Patnaude, Charles B. Putnam, Morgan Park Community Club, Respondents,

v.

DULUTH SCHOOL BOARD INDEPENDENT DISTRICT NO. 709, Appellant (82–958)-Petitioner (82–1059).

Nos. 82–958, 82–1059.

Supreme Court of Minnesota.

Sept. 24, 1982.

Edgerton, Theobald, Abelsen & O'Brien, James N. Abelsen and Gerald A. Pommerville, Duluth, for appellant in No. 82–958.

Hanft, Fride, O'Brien & Harries, Edward T. Fride and Richard J. Leighton, Duluth, for petitioner in No. 82–1059.

Knetsch, Hunt, Bang & Arnold, Jerome G. Arnold and James J. Bang, Duluth, for respondents.

Peterson, Popovich, Knutson & Flynn, Peter S. Popovich and Susan J. Schoell, St. Paul, for Minnesota School Boards Ass'n.

PER CURIAM.

The Duluth School Board Independent District No. 709 (Board) appeals from an order and judgment of the St. Louis County District Court permanently restraining it from taking further action to close Morgan Park Senior High School or to implement Resolution No. G–12–81–375. The Board also alternatively petitions for a writ prohibiting enforcement of the district court's order and moves for summary reversal of the judgment.[1] The issue, broadly stated, is whether the trial court erred in issuing the injunction by failing to apply proper principles of review to the Board's decision. We conclude that it did and, accordingly, we reverse.[2]

On December 2, 1978, pursuant to Minn. Stat. § 122.87 (1980), the Board adopted a

[1.] A prehearing conference in the direct appeal was conducted by a member of this court on July 29, 1982. A decision was made at that time that the appeal would not be expedited. However, thereafter this court was informed that in a similar but unrelated school matter another member of the same district court had issued a decision contrary to or at variance with the ruling in this matter. Because of this, we granted the renewed motion to expedite to resolve what appeared to be inconsistent dispositions of comparable matters.

[2.] By order of this court filed on August 27, 1982, the decision of the district court was reversed. We there indicated that the opinion would be issued forthwith.

5-year plan stating the district's educational goals and a procedure for utilizing resources to attain them. The plan made no provision for changes in the use of Morgan Park Senior High School through 1983. On October 13, 1981, the Board adopted a new long range facilities plan for the period 1981 through 1986. Under the new plan Morgan Park Senior High School's approximately 250 students would be transferred to Denfeld Senior High School commencing in the fall of 1982. Morgan Park would continue as a Junior High School receiving approximately 250 students from West Junior High School. In turn, the West Junior High School building would be used to house elementary students from several other facilities. One effect of this reorganization would be the closure of Irving Elementary School, an 1890 building suffering from irreparable deterioration.

On November 16, 1981, the Board published notice of hearing to be held on December 2, 1981, to receive testimony for and against "the proposed closing of the Morgan Park Senior High School" based upon the following Board determinations:

1. A continuing decline in pupil enrollments has a direct negative effect on the school district's ability to secure revenues sufficient to maintain existing programs, services and buildings.

2. Educational programs and services offered senior high pupils, at Morgan Park Senior High School can be provided at Denfeld High School for the entire Grades 10–12 pupil population of the existing Morgan Park attendance area.

3. In association with other elements of the Long Range Facilities Plan, the school district can effectively reduce maintenance and operating costs within the district.

The hearing was held on December 2, 1981. Parents, faculty members, community leaders, and others were afforded an opportunity to express their views in opposition to the proposed resolution. Upon completion of these proceedings, the Board informed those in attendance that a formal decision would be made at a special meeting of the Board on December 15, 1981. On that latter date, Resolution No. G–12–81–375 was adopted recharacterizing the joint junior-senior high Morgan Park school building to a junior high school only and reassigning the senior high school students to Denfeld High School. In addition, the Board adopted Resolution No. G–12–81–376 governing the West Junior High School Building and reassigning its students to the Morgan Park facility in furtherance of the comprehensive plan.

On February 10, 1982, the plaintiffs, a group of civic organizations, taxpayers, and parents petitioned the St. Louis County District Court for a writ of certiorari to review the Board's action contending that there was not an adequate basis to support adoption of the resolution with regard to Morgan Park Senior High School. The writ was issued on that date, and the school board was temporarily enjoined from taking further action to implement the resolution until the matter could be decided on the merits.

The district court conducted its hearing on May 6, 1982, and, by order dated July 16, 1982, essentially found that the Board failed to provide a timely and procedurally adequate hearing and that its closure decision was arbitrary, capricious, and unreasonable. The court therefore issued a permanent injunction restraining the Board "from taking any further action to close Morgan Park Senior High School or to implement Resolution No. G–12–81–375." Judgment was entered on July 16, 1982. This appeal and application for extraordinary relief followed.

Minn.Stat. § 123.35, subd. 1 (1980), vests in the Board broad powers to develop educational objectives and to manage available resources to achieve those goals. These powers are granted to enable the Board to discharge its various duties to the residents of the school district. One such responsibility is to furnish school facilities to every child of school age. By statute the Board is permitted substantial flexibility in establishing, organizing, altering, and discontinuing grades and schools as well as in assign-

ing pupils to facilities within the district. Minn.Stat. § 123.35, subd. 2 (1980). In the legislative scheme, these activities are, and must be, considered regular administrative tasks committed to the discretion of the elected school board members.

While the enormity of the school district's responsibilities necessitates that most decisions be made without the requirement of an opportunity for public participation, the legislature has designated that certain significant actions not be taken until notice has been given and a public hearing held. The closure of a schoolhouse is such a significant event. Schoolhouses have traditionally served as more than an educational facility. They have played an important role as centers for public meetings, elections, social and recreational activities, and other community purposes. Recognizing the potential effect of a closure on the community as a whole, the legislature enacted Minn.Stat. § 123.36, subd. 11, (1980), which provides:

> The board may close a schoolhouse only after a public hearing on the question of the necessity and practicability of the proposed closing. Published notice of the hearing shall be given for two weeks in the official newspaper of the district. The time and place of the meeting, the description and location of the schoolhouse, and a statement of the reasons for the closing shall be specified in the notice. Parties requesting to give testimony for and against the proposal shall be heard by the board before it makes a final decision to close or not to close the schoolhouse.

■ It is in this context that we first consider the propriety of the hearing. General principles of statutory construction require that words chosen by the legislature be given their common and approved meaning. Minn.Stat. § 645.08(1) (1980); *Frank's Nursery Sales v. City of Roseville,* 295 N.W.2d 604 (Minn.1980). Here the statute provides for notice and hearing when the Board proposes to "close a schoolhouse." In common parlance the term "close" means to totally suspend or cease all operation of a

particular facility. In employing this term, the legislature must have intended to require notice and hearing only when a schoolhouse shuts its doors, not when it continues as a school but with a differently composed student body. Our construction of section 123.36, subd. 11, is consistent with approaches taken by courts in other jurisdictions considering similar legislation. *Lang v. Board of Trustees of Joint School District No. 251,* 93 Idaho 79, 455 P.2d 856 (1969) (statute providing for notice of proposal to "discontinue any school" held inapplicable to transfer of grades 9 through 12 from a facility that previously served grades 7 through 12); *Choal v. Lyman Independent School District No. 12 Board of Education,* 87 S.D. 682, 214 N.W.2d 3 (1974) (statute requiring voter approval to "cease operating" a school held inapplicable to transfer of seventh and eighth grade students to a junior high school and retention of elementary school to serve grades 1 through 6); *see also Welch v. Board of Education of Unified School District No. 495,* 212 Kan. 697, 512 P.2d 358 (1973). We are compelled to conclude that when the Board redefines the student body to be housed in a particular schoolhouse and transfers students to other facilities within the district, it exercises a general administrative function under section 123.35, subd. 2. There is no "closing" of a schoolhouse within the meaning of section 123.36, subd. 11, and no notice and hearing are mandated.

■ The Board's gratuitous provision of a hearing has resulted in a series of procedural difficulties relating to judicial review of the Board's action. Plaintiffs sought and obtained a writ of certiorari in the district court on the assumption that the Board had performed a quasi-judicial function by "closing" Morgan Park Senior High School. Of course, certiorari will lie to review quasi-judicial acts and proceedings of administrative bodies. *Beck v. Council of the City of St. Paul,* 235 Minn. 56, 50 N.W.2d 81 (1951). It is not available, however, when the acts sought to be reviewed are of legislative or administrative character. *Honn v. City of Coon Rapids,*

313 N.W.2d 409 (Minn.1982); *State ex rel. Ging v. Board of Education of City of Duluth,* 213 Minn. 550, 7 N.W.2d 544 (1942). We would agree that had a closure occurred, it would have been a quasi-judicial decision because section 123.36, subd. 11, implicitly requires a determination by the Board of the necessity and practicability of the closing following notice and hearing. Section 123.35, subd. 2, on the other hand, simply charges the Board with the general responsibility of furnishing school facilities and commits the means of fulfilling that responsibility to its sound discretion. No specific statutory standards or procedures govern the discharge of this duty. We acknowledge, as we have in the past, that it is frequently difficult to distinguish between judicial, legislative, and administrative acts. *Sellin v. City of Duluth,* 248 Minn. 333, 80 N.W.2d 67 (1956). Yet, in our view, the realignments, of students among the several school buildings in the district, so that the Morgan Park building continues to be used as a school but for junior high pupils rather than for both junior and senior high pupils, constitute administrative acts which are not subject to review by certiorari.

The procedural circumstances of this case are, however, unique. Because there may be procedurally proper means by which the plaintiffs could have obtained review, *see, e.g., Honn v. City of Coon Rapids,* 313 N.W.2d 409 (Minn.1982), we will consider their claims from the perspective of certiorari, their chosen approach.

■■ The standard of review is narrow. The trial court must determine, through an examination of the entire record before the Board, only whether the Board had jurisdiction, whether it acted within those jurisdictional bounds and whether the evidence furnished any legal and substantial basis for the action taken. *Beck v. Council ·of the City of St. Paul,* 235 Minn. 56, 50 N.W.2d 81 (1951). The trial court must not put itself in the place of the Board, try the matter *de novo,* and substitute its findings for those of the Board. *State ex rel. Ging v. Board of Education of the City of Duluth,* 213 Minn. 550, 7 N.W.2d 544 (1942). On appeal to this

court, our function is to make an independent examination of the Board's record and decision and to arrive at our own legal conclusions without according any special deference to the trial court's review. *Northwestern College v. City of Arden Hills,* 281 N.W.2d 865, 868 (Minn.1979); *Reserve Mining Co. v. Herbst,* 256 N.W.2d 808, 824 (Minn.1977). We, too, are restrained from substituting our judgment for that of the Board.

■ The extensive materials amassed by the Board in the years preceding the action taken with regard to Morgan Park Senior High School include, but are not limited to budgetary, revenue and long-range planning information; educational and curriculum data; geographic and demographic studies; building evaluations; substantial public input; and affidavits and opinions of administrative and professional staff charged with the delivery of optimal education to residents of the school district. The record also reflects the Board's deep concern not only with the subject facility but also with the district as a whole.

In the exercise of its administrative judgment, the Board directed the redefinition of the student body composition and the recharacterization of the Morgan Park facility. While its action is perhaps inconsistent with the many expressed opinions of the residents of the area, that factor is not determinative. Instead, the critical inquiry is whether the record provides a substantial basis for the action taken by the Board. We find that it does, particularly where the question is debatable and requires elected officials to exercise their administrative judgments. While the trial court found to the contrary, it is not within its province or ours to substitute its judgment for that of the Board.

Reversed and remanded with instructions to vacate the permanent injunction.

COYNE, J., took no part in the consideration and decision of this court.