Edward KELLY, et al., Relators,

v.

INDEPENDENT SCHOOL DISTRICT
NO. 623, Respondent.

No. C9–85–1358.

Court of Appeals of Minnesota.

Jan. 28, 1986.

Dennis B. Johnson, Minneapolis, for relators.

Joseph E. Flynn, Patrick J. Flynn, St. Paul, for respondent.

Heard, considered, and decided by LESLIE, P.J., and WOZNIAK and HUSPENI, JJ.

## OPINION

HUSPENI, Judge.

The School Board for Independent School District No. 623 passed a resolution to close Kellogg High School. This court issed a writ of certiorari to review the School Board's decision. On appeal, relators argue that (1) the School Board did not comply with the procedural requirements of Minn.Stat. § 123.36, subd. 11 (1984) and (2) the School Board's decision is not sup-

ported by substantial evidence on the record. We affirm in part, reverse in part and remand.

## FACTS

In response to the problems of declining enrollment and the rising costs of maintaining school buildings, the School Board for Independent School District No. 623 created a Programs and Facilities Usage Committee to study the District's problems and some alternative solutions. The Committee held eight meetings which resulted in a Tentative Long Range Plan for the District's programs and facilities.

The Committee addressed four questions to formulate this Tentative Plan:

(1) Should the grade groupings established in 1981 be continued or should changes be made?

(2) Should changes be made in the 9–12 program and organization?

(3) Should rooms be set aside in elementary schools for art, computers, science?

(4) Should alternatives for delivery of the elementary school program be expanded?

Imformation on possible answers to these questions was obtained from persons both outside and within the District, from review of printed material, and from discussions and statements by Committee members.

At an October 30, 1984, special board meeting, the Board voted to adopt the Committee's Tentative Plan which included a recommendation that:

the District identify as its long range plan to have two 9–12 high schools and will begin immediately to study and analyze course offerings, curriculum, activities, delivery systems, and financial impact necessary to implement this long range plan.

The Board then held four public meetings/hearings to receive comments from the public. These comments were considered at the December 13, 1984, school board meeting. At this meeting, the School Board considered the results of surveys completed by parents and teachers regarding different grade groupings and the possibility of one high school. In addition, the School Board received a memo from the District Administration opposing a 7–12 grade grouping in two high schools. Finally, the School Board considered possible changes to the Tentative Plan.

On December 20, 1984, the Board held another meeting. At this meeting they considered letters from the public and administration supporting the closing of one high school. They also considered a report from the administration that showed the cost savings for various options. This report covered the option of closing Kellogg but did not show similar projections for closing Ramsey. Also, the report did not show total operating amounts for either Kellogg or Ramsey. The School Board then voted to adopt a Comprehensive Plan which included closing Kellogg High School.

At the next board meeting on January 24, 1985, the Superintendent reminded the Board that they would have to hold a public hearing before they could make a final decision to close Kellogg. The Board then scheduled such a hearing. At this same meeting the School Board established a task force to help with the grade reorganization necessary to close Kellogg High School.

The School Board next met on February 14, 1985. The School Board reviewed letters from city officials, the Kellogg PTA and PTSA and other members of the public asking for a more thorough study on the issue of which school to close. The meeting minutes indicate that the School Board then explained the procedure it used to arrive at its decision. This explanation is not included in the record.

A public hearing on the proposed closing of Kellogg High School was held on March 26, 1985. At this hearing, the Kellogg PTA presented a study on location, population distribution and zoning. Other citizens spoke both for and against closing Kellogg High School. Several citizens urged the School Board to conduct further studies.

In addition, a petition containing approximately 1,700 names was presented and asked the School Board to give the matter further study. Similar concerns were expressed in over forty letters that the School Board received.

The final decision to close Kellogg High School was made at the April 25, 1985, school board meeting. The School Board considered several reports at this meeting, including an energy consumption and cost report, a building and grounds survey report, and a department by department in-depth comparison of the two high schools with remarks from both schools and comments from the School Board. There were also reports from the Kellogg PTA showing population shifts and the financial feasibility of other alternatives. None of these reports clearly favors one school over the other.

The April 25 meeting minutes indicate the School Board reviewed the factors that led to its decision. Once again, however, the text of this review is not included in the record. In the draft of a "data package" explaining the closure, the School Board indicated that the criteria used to reach its decision were:

1. Both schools provide equivalent edu-·cational opportunities for our students.
2. Operational costs of the two buildings are equivalent. Therefore, the taxpayers of our School District are being given good value for their dollars.
3. Location of the schools with respect to the communities we serve and numerous "soft data" evaluations and comparisons.

The Board's decision was published on May 27, 1985, and on July 19, 1985, a petition for writ of certiorari was filed. The writ was issued that same day. The School District's motion to dismiss the writ was denied.

## ISSUES

1. Did the Board comply with the notice and hearing requirements of Minn.Stat. § 123.36, subd. 11?

2. Is the Board's decision to close Kellogg High School supported by substantial evidence on the record?

## ANALYSIS

### I.

Relators argue that the School Board made its decision to close Kellogg High School at the December 20, 1984, board meeting when it voted for a Comprehensive Plan that included closing Kellogg. Because this decision preceded the public hearing, they contend the Board did not comply with Minn.Stat. § 123.36, subd. 11 which requires a public hearing before a final decision is made.

■ Closing a schoolhouse is a significant action that cannot be taken until there has been notice and a public hearing. *Western Area Business & Civic Club v. Duluth School Board Independent District No. 709*, 324 N.W.2d 361 (Minn.1982). Section 123.36, subd. 11 requires that:

> The board may close a schoolhouse only after a public hearing on the question of the necessity and practicability of the proposed closing. Published notice of the hearing shall be given for two weeks in the official newspaper of the district. The time and place of the meeting, the description and location of the schoolhouse, and a statement of the reasons for the closing shall be specified in the notice. Parties requesting to give testimony for and against the proposal shall be heard by the board before it makes a final decision to close or not to close the schoolhouse.

Minn.Stat. § 123.36, subd. 11 (1984). The statute does not state at exactly what stage in the decision-making process a board must hold public hearings. It requires only that the hearing must be held before a final decision is reached.

■ The fact that the School Board received information and formulated a proposal to close Kellogg High School before the public hearing does not violate section 123.36, subd. 11. We recognize the importance of public input but "[s]uch testimony

is only one factor the Board must consider in reaching a decision." *Moberg v. Independent School District No. 281*, 336 N.W.2d 510, 515 (Minn.1983). The statute is satisfied when interested parties are given the opportunity to participate fully in the meetings and hearings that follow a proposal to close a schoolhouse. *See Moberg*, 336 N.W.2d at 514–15.

In the present case, the School Board gave notice of its proposal to close Kellogg High School on March 4 and March 11, 1985. A public hearing was held on March 26, 1985. The School Board also received many written comments from interested parties. These comments were considered before the final decision to close Kellogg High School was made on April 25, 1985. There are no facts alleged that would show that any interested parties were not given the opportunity to participate fully in the hearings and meetings.

Relators contend that the School Board's adoption of the Comprehensive Plan on December 20 was a final decision. Relators claim that to comply with section 123.36, subd. 11, the School Board should have decided simply to close a school and then held the public hearing on the issue of which school to close. There are no facts to show that the School Board's December 20 decision was final and could not have been reversed if the School Board had received information showing the closure was not necessary or practicable. Under section 123.36, subd. 11, the announcement of the proposed closing of a particular school is a required procedure that starts the hearing process. *Moberg*, 336 N.W.2d at 514. The approach relators argue for would not satisfy the procedural requirements of section 123.36, subd. 11.

In *Moberg*, the school board had to determine which one of three high schools to close. Because of the complexity and serious consequences of such a decision, the board initially gave notice as required by section 123.36, subd. 11 of its intention to close all three high schools and then held hearings for each facility. *Moberg*, 336 N.W.2d at 514. Eventually, the school board voted to reopen two of the high schools. Although section 123.36, subd. 11 does not require such an approach, we note that this approach appears to provide for the optimum public input when such controversial decisions must be made.

## II.

Relators argue that the record does not contain substantial evidence to support the School Board's decision to close Kellogg High School. Relators recognize that the record contains substantial evidence to support the decision to close *a* school but contend it does not contain evidence to support closing Kellogg rather than Ramsey.

■ Great deference is given to school board decisions. On appeal this court will review the record to determine if the board's findings are supported by substantial evidence. *Whaley v. Anoka-Hennepin Independent School District No. 11*, 325 N.W.2d 128 (Minn.1982). Substantial evidence is:

1. Such relevant evidence as a reasonable mind might accept as adequate to support a conclusion;
2. More than a scintilla of evidence;
3. More than some evidence;
4. More than any evidence; and
5. Evidence considered in its entirety.

*Cable Communications Board v. Nor-West Cable Communications Partnership*, 356 N.W.2d 658, 668 (Minn.1984).

In *Western Area Business & Civic Club*, the court found the school board's decision was supported by the record. That record included:

[E]xtensive materials amassed by the Board in the years preceding the action * * * not limited to budgetary, revenue and long-range planning information; educational and curriculum data; geographic and demographic studies; building evaluations; substantial public input; and affidavits and opinions of administrative and professional staff charged with the delivery of optimal education to residents of the school district. The record also reflects the Board's deep concern

not only with the subject facility but also with the district as a whole.

*Western Area Business & Civic Club,* 324 N.W.2d at 365. The fact that the Board's decision was contrary to "the many expressed opinions of the residents of the area" was not determinative. *Id.*

■ In the present case, the record also contains many reports and studies. However, we must determine whether these materials support the School Board's decision to close Kellogg High School. After a careful review of the record, we must conclude the record does not support the School Board's decision.

The majority of the data in the record is directed at the feasibility of closing *a* high school. There is ample support to close *a* high school and relators are not appealing the Board's decision to do so.

The record contains no data or commentary about the closing of Kellogg High School prior to the December 20 vote. At the December 20 meeting, a cost report was considered by the School Board. That report addressed only the option of closing Kellogg High School. It did not show total operating amounts for either school.

The record contains several reports received after adopting the proposal to close Kellogg High School. Some of these reports, particularly those on demographics and population shifts, were prepared by the Kellogg PTA. Those reports do not support the closing of Kellogg High School. The record does not contain any information prepared by the School Board on demographics and population shifts.

The record also contains several reports from the District Administration on the cost of operations and comparison of the two high school facilities. The record does not, however, contain any analysis of this data. The data itself does not reflect any obvious reasons for choosing to close one facility rather than the other.

The School Board recognized the equality of the physical factors when it enumerated its criteria for deciding to close Kellogg High School. Those criteria were:

1. Both schools provide equivalent educational opportunities for our students.
2. Operational costs of the two buildings are equivalent. Therefore, the taxpayers of our School District are being given good value for their dollars.
3. Location of the schools with respect to the communities we serve and numerous "soft data" evaluations and comparisons.

■ When two facilities are essentially equal physically, it is appropriate to consider the long-term welfare of the entire school district. *See Moberg,* 336 N.W.2d 515. The School Board in this case indicates that its decision was in part based on "soft data" and "value judgments," but nowhere in the record does the School Board articulate what these values and soft data are. A careful review of the record provides no answers to the question "why was Kellogg High School chosen for closure?"

The School Board argues that "much of the process which a School Board engages in when rendering a decision such as that involved in a school closing is not recorded." Thus, the School Board claims that the record "includes but a part of the information and facts that were available and considered by the School Board, culminating in the April 25, 1985 decision to close Kellogg High School." We have only the record to consider on review, however. We realize that there may be subjective concerns and pressures that influence such a controversial decision, but unless they are part of the record we cannot consider them as support for the School Board's decision.

This court recognizes the importance of affording school boards broad discretion in their decision making. The record in the present case, however, is practically devoid of any articulated standards or reflective findings. The School Board's decision here had substantial effect on the community as a whole, not only for the present but for the future as well. Such a decision must be supported by a record that enables meaningful review; a record that includes standards and findings which demonstrate

that the School Board carefully considered all the relevant problems and alternatives. A remand is necessary so that such an adequate record may be developed.

### DECISION

1. The School Board complied with the procedural requirements of Minn.Stat. § 123.36, subd. 11.

2. There is not sufficient evidence on the record to support the School Board's decision to close Kellogg High School. While we recognize that this court's limited authority does not allow us to order an independent study, we urge the School Board to conduct such further studies or hearings as it deems necessary or advisable. In place of the present conclusionary statements, the record on remand should include, inter alia, articulation of the specific "value judgments" and "soft data" upon which the School Board based its decision to close Kellogg School.

Affirmed in part, reversed in part and remanded for proceedings consistent with this opinion.