**CONCERNED CITIZENS FOR THE PRESERVATION OF INDEPENDENT SCHOOL DISTRICT NO. 712, Relator,**

v.

**MOUNTAIN IRON–BUHL INDEPENDENT SCHOOL DISTRICT NO. 712, Respondent.**

**No. C9–88–1732.**

Court of Appeals of Minnesota.

Nov. 29, 1988.
Review Denied Jan. 25, 1989.

Marshall H. Tanick, Martin D. Munic, Tanick & Heins, P.A., Minneapolis, for relator.

John M. Roszak, James L. Beattie, Ratwick, Roszak, Bergstrom, Maloney & Bartel, P.A., Bloomington, for respondent.

Heard, considered, and decided by HUSPENI, P.J., and SCHUMACHER and LESLIE *, JJ.

## OPINION

LESLIE, Judge.

Relator Concerned Citizens for the Preservation of Independent School District No. 712 (Concerned Citizens) commenced this action against Independent School District No. 712 to temporarily enjoin implementation of the school board's decision to reopen Martin Hughes Middle School in Buhl, Minnesota, and to close Mountain Iron–Buhl High School in Mountain Iron, Minnesota.

This case is before this court on a writ of certiorari. On appeal, relator contends that the July 5, 1988 decision of the school board was a closing of the Mountain Iron–Buhl building under Minn.Stat. § 123.36, subd. 11 (1986) (School Closing Law). Relator also claims the board did not follow the school closing procedures required by section 123.36, subd. 11. Finally, relator argues that there was not substantial evidence to support the board's decision. We reverse and remand.

## FACTS

In 1985, the Mountain Iron and Buhl school districts consolidated to form Independent School District 712. Until July 5, 1988, District 712 had three schools: Merritt Elementary (grades K–5) in Mountain Iron, Martin Hughes Middle School (grades 6–9) in Buhl, and Mountain Iron–Buhl High School (grades 10–12) in Mountain Iron. District 712 now uses Martin Hughes as the district's high school and continues to use Merritt Elementary as its elementary school.

In mid-November of 1987, the district sought legal advice about how to close a school building. In a November 17, 1987 letter, the district's attorney provided the district with a copy of the School Closing Law which listed the requirements for closing a school. The attorney emphasized that the district should follow the statutory procedures closely if the district decided to close a school:

Failure to comply with either the procedural or substantive standards [for closing a school] will result in the closure decision being reversed by a court. Accordingly, the School Board must be very careful in strictly complying with the statute.

\*    \*    \*    \*    \*    \*

This is not a situation where the decision is made and then justified at a later date.

In late November of 1987, because of financial problems and declining enrollment, District 712's school board resolved to investigate the possibility of closing a school.

In December 1987, the school board established the School Building/Grounds Utilization Review Task Force (the Task Force) comprised of school faculty, district personnel, and an equal number of citizens from both communities to extensively study the issue of closing a school. After the Task Force issued its report, the school board voted 4–3 in March of 1988 to close Martin Hughes, to move grades K–6 to Merritt Elementary, and to move grades 7–12 to Mountain Iron–Buhl High School in Mountain Iron.

After giving the public notice required by Minn.Stat. § 123.36, subd. 11 (1986), the school board held a public hearing about the closing on April 25, 1988. After the public hearing, the board voted to close Martin Hughes by a 5–2 margin.

In May of 1988, the district held a school board election. Two new board members were elected and one incumbent was reelected. On July 5, 1988, the new board voted 4–3 to reopen Martin Hughes for grades 6–12 and to operate Merritt Elementary for grades K–5. It also voted to close the Mountain Iron–Buhl building. The new board decided to leave open a small portion of the high school annex. The decision closed all but approximately 7,000 square feet of the building's 91,489 square feet.

Presently, the food occupations area, consisting of a kitchen, a classroom, and a part-time restaurant, remains open two to four hours daily for a 20–member class.

---

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 2.

The district operates its administrative offices, with a staff of approximately four people, out of part of the annex. The school's gymnasium will be open in the fall and winter for girls' volleyball and basketball and boys' basketball. The remainder of the annex and the entire main building are closed.

## ISSUES

1. Did the board's decision to close all but a minor portion of the school building amount to a "closing" within the meaning of Minn.Stat. § 123.36, subd. 11 (1986)?

2. Did the board's decision comply with the notice and hearing requirements of Minn.Stat. § 123.36, subd. 11 (1986)?

## ANALYSIS

■ 1. In reviewing a school closing decision, the standard of review depends upon whether the school was "closed." *Western Area Business & Civic Club v. Duluth School Board Independent District No. 709*, 324 N.W.2d 361, 364 (Minn.1982). If the school board's action is a "closing," it is a quasi-judicial function, and relator may obtain review by writ of certiorari. *Id.* If the school board's action is not a "closing," the action is legislative or administrative in nature, and the appellate court will not engage in review by writ of certiorari. *Id.* Thus, we must first determine whether the board's July 5 decision "closed" Mountain Iron–Buhl High School for purposes of Minn.Stat. § 123.36, subd. 11 (1986).

Both parties rely on the supreme court's decision in *Western Area Business & Civic Club.* In *Western Area,* the supreme court held that where a school board transfers students of one school and replaces them with students from another school, the school board's actions do not amount to a closing for purposes of section 123.36, subd. 11. *Id.* at 364. Relator argues that this case, unlike *Western Area,* is a school closing because the school in *Western Area* continued to have a full range of school activities with a different student body while the school here has only 20 students and few student activities. Respondent maintains that this case is a student trans-

fer case and that *Western Area* is therefore applicable.

No Minnesota court has decided whether the situation here is a closing. Given the circumstances of this case, we conclude that the school board "closed" Mountain Iron–Buhl High School for purposes of the School Closing Law. The facts in *Western Area* are distinguishable from the facts here. In *Western Area,* the school board transferred Morgan Park High School's 250 students and replaced them with 250 junior high students. The school still had a full student body, a full curriculum, and a full range of student activities. The supreme court characterized the change as a reorganization and held that the school board had correctly exercised its general powers to develop educational objectives and to manage resources under Minn.Stat. § 123.35, subds. 1 and 2 (1986). *Id.* at 363. The court refused to apply the School Closing Law to transfers of students which do not result in the school closing its doors, but result in the school continuing with a different student body. *Id.* at 364.

Respondent argues that the actions taken in this case amount to a reorganization or transfer and thus were a permissible exercise of the general powers granted by section 123.35 and recognized in *Western Area.* In pertinent part, section 123.35 reads:

Subdivision 1. The board shall have the general charge of the business of the district, the school houses, and of the interests of the school thereof.

Subdivision 2. * * * The board may establish and organize and alter and discontinue such grades or schools as it may deem advisable and assign to each school and grade a proper number of pupils.

Minn.Stat. § 123.35, subds. 1, 2 (1986).

Respondent premises its argument on the contention that when changes leave a school at least partially operational, the changes represent a proper exercise of the board's general powers to operate and maintain schools and amount to a student transfer, not a closing. According to respondent, the board's action in this case was a student transfer because the school

has one class, some administrative offices, and a few extra-curricular activities in the gymnasium.

Respondent's argument is meritless. Here, all but 20 students left the Mountain Iron building. The 20 students who remain spend only partial days at the Mountain Iron facility. No students replaced the "transferred" students. There is no full curriculum and few activities. The doors of the school may be open, but for all practical purposes, the building does not exist as a school.

■ Respondent's contention that a secondary school exists where there is use of "any portion" of a building is equally unpersuasive. Section 120.05, subd. 2(3) defines a secondary school as:

> * * * any school with building, equipment, courses of study, class schedules, enrollment of pupils ordinarily in grades seven through 12 or *any portion thereof* * * *.

Minn.Stat. § 120.05, subd. 2(3) (1986) (emphasis added). A reasonable reading of the statute is that "any portion thereof" means that a building with any portion of grades seven through twelve is a secondary school not that a building with a portion left open to some students in grades seven through twelve is a secondary school. We conclude that the board's July 5 decision was a closing under § 123.36, subd. 11. Thus, the board was required to comply with the procedures set forth in that section.

■ 2. Before a school board can close a school, it must: (1) publish notice of a public hearing on the issue for two weeks in the school district's official newspaper; (2) hold a public hearing on the question of the practicability and necessity of the proposed closing; (3) describe the school and its location; and (4) include reasons for the closing in the notice. Minn.Stat. § 123.36, subd. 11 (1986). *See Moberg v. Independent School District No. 281*, 336 N.W.2d 510, 511 (Minn.1983); *Kelly v. Independent School District No. 623*, 380 N.W.2d 833, 835 (Minn.Ct.App.1986).

Here, the new board did not issue the required notice or conduct the required public hearing before deciding to close the Mountain Iron–Buhl facility. Instead, on July 5, 1988, the board unilaterally overturned the former board's decision to close Martin Hughes. We therefore reverse the new board's decision for failure to comply with the School Closing Law.

Respondent argues that the new board was not required to follow the statutory procedures because this case involves a student transfer. Allowing a school board to close approximately 90% of a school without requiring the board to comply with the School Closing Law would permit school boards to circumvent the statute's procedural requirements. In this case, when the former board decided to investigate the possibility of closing a school, it consulted the district's attorney who provided the district with a copy of the School Closing Law. The attorney also suggested several ways the district could avoid the very problems that have arisen here. Members of the old board knew what procedures were required by the statute. The old board complied with the notice and hearing requirements of the statute.

We find it ironic that the new board, which consisted of several old board members who were aware of the requirements for closing a school, chose to leave open a small part of the Mountain Iron–Buhl building. The new board's action appears to be an attempt to circumvent the School Closing Law.

Respondent maintains that even if we remand this case for failure to follow statutory procedures, the board will simply follow the procedures and make the same decision. We recognize that the board's decision may be the same upon reconsideration. Nevertheless, we reverse and remand this case for procedural compliance with the statute. Because we conclude that the school board did not comply with statutory requirements, we need not determine whether there was substantial evidence for the board's decision to close Mountain Iron–Buhl High School.

## DECISION

The school board's action amounted to a closing under Minn.Stat. § 123.36, subd. 11 (1986), thus requiring compliance with the statute's procedures. The school board's July 5 decision did not comply with the statute's procedures.

REVERSED AND REMANDED.