CITIZENS CONCERNED
FOR KIDS, Relator,

v.

YELLOW MEDICINE EAST INDE-
PENDENT SCHOOL DISTRICT
NO. 2190, Respondent.

No. A05–71.

Court of Appeals of Minnesota.

Sept. 20, 2005.

Marshall H. Tanick, Phillip J. Trobaugh; Mansfield, Tanick & Cohen, P.A., Minneapolis, MN, for relator.

Kevin J. Rupp, Jennifer L. Wolf, Ratwik, Roszak & Maloney, P.A., Minneapolis, MN, for respondent.

Considered and decided by WRIGHT, Presiding Judge; SHUMAKER, Judge; and FORSBERG, Judge.*

## OPINION

WRIGHT, Judge.

Relator challenges the decision of a school district to reassign junior high students from a facility housing elementary and junior high grades to a facility housing high school grades, arguing that, because the reassignment is a schoolhouse closing, the school district did not comply with the procedures set forth in Minn.Stat. § 123B.51, subd. 5 (2004). We questioned whether certiorari review is available if the school district did not close a schoolhouse. A special-term panel of this court referred the jurisdictional issue to the reviewing panel. Relator also moves to strike documents presented on appeal that were not before the school district at the time of its decision. We discharge the writ of certiorari and grant the motion to strike.

## FACTS

Respondent Yellow Medicine East Independent School District No. 2190 (the district) operates three major facilities. Two facilities are in Granite Falls: Bert Raney Elementary School, which houses kindergarten through grade six, and Yellow Medicine East High School, which houses grades nine through twelve. The remaining facility, in Clarkfield, houses kindergarten through grade eight.

The district describes the Clarkfield facility as containing two separate "schools"—H.A. Hagg Elementary School, for grades kindergarten through six, and Yellow Medicine East Junior High School, for grades seven and eight. In this facility, grades seven and eight comprise 170 students or 53 percent of the student population and occupy about half of the floor space.

The district formed a committee to review the use of its school facilities in June 2002. After developing grade configurations for each facility, the committee presented several options to the public in September 2004. The committee issued its final report at a school board meeting on November 8, 2004, recommending that the district move grades seven and eight from the Clarkfield facility to the facility housing Yellow Medicine East High School in Granite Falls. The school board adopted the committee's recommendation at the next meeting of the school board on November 22, 2004. Relator Citizens Concerned for Kids brought this certiorari appeal.

## ISSUE

Did the district's reassignment of its junior high students from a joint elementary and junior high facility to a separate high school facility constitute a schoolhouse closing under Minn.Stat. § 123B.51, subd. 5 (2004)?

## ANALYSIS

### I.

■■■ To be reviewable by certiorari, a school board decision must be "quasi-judicial" in nature. *Minn. Chapter of Associated Builders & Contractors, Inc. v. Bd. of Educ. of Minnetonka Indep. Sch. Dist. No. 276*, 567 N.W.2d 761, 763 (Minn.App.1997),

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to

Minn. Const. art. VI, § 10.

*review denied* (Minn. Aug. 26, 1997). The three indicia of quasi-judicial actions are "(1) investigation into a disputed claim and weighing of evidentiary facts; (2) application of those facts to a prescribed standard; and (3) a binding decision regarding the disputed claim." *Minn. Ctr. for Envtl. Advocacy v. Metro. Council,* 587 N.W.2d 838, 842 (Minn.1999) (*MCEA* ). Certiorari is not available when the acts sought to be reviewed are of a legislative or administrative character. *W. Area Business & Civic Club v. Duluth Sch. Bd. Indep. Dist. No. 709,* 324 N.W.2d 361, 364 (Minn.1982).

■ The closure of a schoolhouse is a quasi-judicial decision because the governing statute requires a determination by the school board of the necessity and practicability of the closing following notice and a hearing. *Id.* at 365. As a quasi-judicial decision, the closure of a schoolhouse is reviewable by certiorari. *Id.*

■ By contrast, no specific statutory standards or procedures govern the discharge of a school board's general responsibility of furnishing school facilities. *Id.* Therefore, the reassignment of grades among several school buildings in the district constitutes an administrative act, which is not subject to review by certiorari. This action is not quasi-judicial as defined by *MCEA* because it does not involve application of evidentiary facts to a prescribed standard. The failure to meet any of the three indicia of quasi-judicial acts as defined by *MCEA* is fatal to a claim that the proceedings are quasi-judicial. *MCEA,* 587 N.W.2d at 842.

Citizens Concerned for Kids (CCFK) argues that a schoolhouse closing occurred when the district reassigned its junior high grades from a facility that jointly housed elementary and junior high students to a separate high school facility. CCFK contends, therefore, that the district's failure to follow statutory procedures for closing a schoolhouse warrants reversal of the district's decision. The procedures for closing a schoolhouse are set forth in Minn. Stat. § 123B.51, subd. 5 (2004), which provides:

> The board may close a schoolhouse only after a public hearing on the question of the necessity and practicability of the proposed closing. Published notice of the hearing shall be given for two weeks in the official newspaper of the district. The time and place of the meeting, the description and location of the schoolhouse, and a statement of the reasons for the closing must be specified in the notice. Parties requesting to give testimony for and against the proposal shall be heard by the board before it makes a final decision to close or not to close the schoolhouse.

CCFK makes two distinct arguments in support of its assertion that a schoolhouse closing took place. First, because the junior high grades were recognized as a separate "school," CCFK argues that the junior high grades had a separate "schoolhouse" subject to the statutory schoolhouse-closing requirements. In the alternative, CCFK asserts that the overall reduction of the student population in the Clarkfield facility was sufficient to constitute a closing.

■ The first argument requires us to interpret the meaning of "schoolhouse" under Minn.Stat. § 123B.51, subd. 5. The primary object of statutory interpretation is to discern and effectuate the intention of the legislature. Minn.Stat. § 645.16 (2004); *Olmanson v. LeSueur County,* 693 N.W.2d 876, 879 (Minn.2005). In doing so, when the meaning of the statutory terms is clear, we apply the statute's plain language. *Molloy v. Meier,* 679 N.W.2d 711, 723 (Minn.2004). We construe words and phrases in accordance with common usage,

*Sprint Spectrum LP v. Comm'r of Revenue,* 676 N.W.2d 656, 662 (Minn.2004), and in the context of the entire statutory provision, *ILHC of Eagan, LLC v. County of Dakota,* 693 N.W.2d 412, 419 (Minn.2005).

■ The term "schoolhouse" is defined as a "building used as a school." *The American Heritage Dictionary* 1615 (3d ed.1992). This definition comports with Minn.Stat. § 123B.51, in which references to "schoolhouse" consistently relate to the entire building or property where school takes place. *See, e.g.,* Minn.Stat. § 123B.51, subds. 1 (construction and acquisition of schoolhouses), 2 (2004) (use of schoolhouses for nonschool purposes); *see also* Minn.Stat. § 123B.97, subd. 1 (2004) (controlling acquisition of schoolhouse sites by common school districts). By its plain meaning and by its use throughout the statutory provision, a schoolhouse is the entire building or facility in which school takes place.

Arguing that the term "schoolhouse" is functionally equivalent to the term "school," CCFK proposes that the definition of schoolhouse be guided by Minn. Stat. § 120A.05, subd. 13 (2004), which defines a secondary school as "any school with building, equipment, courses of study, class schedules, [and] enrollment of pupils ordinarily in grades 7 through 12 or any portion thereof[.]" But this argument fails to distinguish a school, as an academic institution for children, from a schoolhouse, which is a building used by a school. Because these concepts are plainly distinct, CCFK's argument is unpersuasive. Thus, applying the plain meaning of the term "schoolhouse," we conclude that, when the district decided to move the junior high grades out of the Clarkfield facility, these grades were not a separate "schoolhouse" to which the statutorily prescribed process for a schoolhouse closing attached.

■ We next consider CCFK's argument that, by moving the junior high grades out of the Clarkfield facility, the reduction in student population was sufficient to constitute a schoolhouse closing. The Minnesota Supreme Court addressed what actions constitute a schoolhouse closing in *Western Area.* There, a school district moved 250 high school students, the entire student population, out of a facility and replaced them with 250 junior high students. 324 N.W.2d at 363. The supreme court reasoned:

> In common parlance the term "close" means to totally suspend or cease all operation of a particular facility. In employing this term, the legislature must have intended to require notice and hearing only when a schoolhouse shuts its doors, not when it continues as a school but with a differently composed student body.

*Id.* at 364. Notwithstanding a complete replacement of the student population, the supreme court concluded that the school district's decision was not a closing but an "administrative act[ ] ... not subject to review by certiorari." *Id.* at 365.

We also considered this issue in *Concerned Citizens for the Pres. of Indep. Sch. Dist. No. 712 v. Mountain Iron–Buhl Indep. Sch. Dist. No. 712* in which a school district decided to move its high school grades into a facility housing the middle school, leaving a small portion of the high school facility open for two to four hours daily to teach a class of 20 students. 431 N.W.2d 601, 602 (Minn.App.1988), *review denied* (Minn. Jan. 25, 1989). After reviewing the outcome in *Western Area,* we concluded that a school district will not be permitted to avoid compliance with the statutory schoolhouse-closing requirements by keeping only a nominal student population in a schoolhouse:

Allowing a school board to close approximately 90% of a school without requiring the board to comply with the School Closing Law would permit school boards to circumvent the statute's procedural requirements....

... The new board's action appears to be an attempt to circumvent the School Closing Law.

*Id.* at 604.

 *Western Area* emphasizes that the grade composition of a school will not control whether a schoolhouse closing has occurred. 324 N.W.2d at 364. It further holds that, for a schoolhouse closing to take place, the district must "totally suspend or cease all operation of a particular facility." *Id. Concerned Citizens* extends this rule by holding that an overwhelming reduction of the student population in a school will also constitute a schoolhouse closing, particularly if it appears that a district is circumventing procedural requirements. 431 N.W.2d at 604.

Here, the decision of the district affects both the size and grade composition of the student population at the Clarkfield facility. But the change in the grade composition of the student population, from a facility jointly housing elementary and junior high grades to a facility exclusively housing elementary grades, is not a relevant factor. *See Western Area,* 324 N.W.2d at 364. Our sole inquiry is whether the reduction of the student population by approximately one half is sufficient to constitute a schoolhouse closing.

 The district did not "totally suspend or cease all operation[s]" at the Clarkfield facility. *Id.* And because the

district is continuing full educational programming for approximately 143 students in the elementary grades, it is not maintaining a nominal student population like that in *Concerned Citizens.* Thus, we conclude that the district did not close a schoolhouse when it decided to move the junior high grades out of the Clarkfield facility and reduce the number of students housed in the facility from approximately 313 to 143. In making this decision, the school district was not required to follow the procedure set forth in Minn.Stat. § 123B.51, subd. 5; and the decision is not reviewable by writ of certiorari.[1] *W. Area Bus. & Civic Club,* 324 N.W.2d at 364.

Our decision is supported by the caselaw from foreign jurisdictions cited favorably by the Minnesota Supreme Court in *Western Area.* Two of three such cases cited concluded that a schoolhouse closing did not occur when a district decided to keep some grades and move other grades out of a schoolhouse. *Lang v. Bd. of Trs. of Joint Sch. Dist. No. 251,* 93 Idaho 79, 455 P.2d 856, 858 (1969); *Choal v. Lyman Indep. Sch. Dist. No. 12 Bd. of Educ.,* 87 S.D. 682, 214 N.W.2d 3, 4–5 (1974). The third case interpreted a statute that expressly codified a similar rule. *Welch v. Bd. of Educ. of Unified Sch. Dist. No. 495,* 212 Kan. 697, 512 P.2d 358, 362 (1973); *see also Hensley v. Bd. of Educ. of Unified Sch. Dist. No. 443,* 210 Kan. 858, 504 P.2d 184, 189 (1972) (interpreting the newly enacted statute as a matter of first impression). Because the district's decision to reassign grades is administrative rather than quasi-judicial, review by certiorari is not available.

1. Because we hold that the decision of the district is not subject to review by writ of certiorari, we need not reach the argument of the district that it substantially complied with the procedural requirements of Minn.Stat.

§ 123B.51, subd. 5. The district also challenged the status of CCFK, as an unincorporated association, to proceed with this appeal. We addressed that issue in favor of CCFK by our order dated May 24, 2005.

## II.

 CCFK moves to strike an affidavit by the district's superintendent, Dwayne Strand. We ordinarily are precluded from considering documents that were not received by the decisionmaker below. Minn. R. Civ.App. P. 110.01; *State by Humphrey v. Delano Cmty. Dev. Corp.*, 556 N.W.2d 922, 924–25 (Minn.App.1996), *aff'd*, 571 N.W.2d 233 (Minn.1997). If a party includes such a document with the record on appeal, the adverse party may move to strike that document from the record. *Davis v. Davis*, 631 N.W.2d 822, 826 (Minn.App.2001). Because the affidavit was prepared after the district made its decision and was not part of the record leading to that decision, we grant CCFK's motion to strike.

## DECISION

The school district was not required to comply with the schoolhouse-closing provisions of Minn.Stat. § 123B.51, subd. 5 (2004), when it decided to retain the elementary grades at a facility jointly housing elementary and junior high grades and reassign the junior high grades to another facility. Certiorari review is not available because the appeal does not involve a quasi-judicial decision by the school district.

**Writ of certiorari discharged; motion granted.**