LIFESPAN OF MINNESOTA, INC., Appellant,

v.

MINNEAPOLIS PUBLIC SCHOOLS INDEPENDENT SCHOOL DISTRICT # 1, Respondent (A13–1165),

St. Paul Public School District # 625, Respondent (A13–1166),

Rosemount–Apple Valley–Eagan Public Schools Independent School District # 196, Respondent (A13–1167),

Anoka–Hennepin School District # 11, Respondent (A13–1168)

Nos. A13–1165, A13–1166, A13–1167, A13–1168.

Court of Appeals of Minnesota.

Jan. 13, 2014.

Terrance W. Moore, Carol. R.M. Moss, Hellmuth & Johnson, PLLC, Edina, MN, for appellant.

Laura Tubbs Booth, Cindy L. Lavorato, Booth & Lavorato, LLC, Minnetonka, MN, for respondents.

Considered and decided by HALBROOKS, Presiding Judge; ROSS, Judge; and CRIPPEN, Judge.*

\* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

## OPINION

ROSS, Judge.

Appellant Lifespan of Minnesota, Inc., sued respondents Minneapolis Public Schools, St. Paul Public Schools, Rosemount–Apple Valley–Eagan Public Schools, and Anoka–Hennepin School District for breach of contract based on the school districts' alleged failure to pay for educational services that Lifespan provided to student-attendees of its day treatment program. Lifespan also sued the St. Paul and Anoka–Hennepin districts for alleged statutory violations. The school districts moved for judgment on the pleadings. The district court dismissed Lifespan's claims with prejudice, holding that the court lacked subject-matter jurisdiction over the breach-of-contract claims and that the statutory claims lacked merit. Because Lifespan's contract claims in part seek only to recover damages for the school districts' refusal to pay Lifespan for prior services that Lifespan provided under its contracts with the districts, its claims do not challenge quasi-judicial conduct and are actionable within the district court's subject-matter jurisdiction. We therefore reverse in part. But because the district court appropriately held that the balance of Lifespan's claims either challenge quasi-judicial decisions or lack legal merit, we affirm in part.

## FACTS

Litigation in the district court has not left the pleading stage, so we base our jurisdictional review on the following facts without prejudice to the case as it may develop. Lifespan operates a youth day treatment program called the Youth Transition Program. A "[d]ay treatment program" is "a site-based structured program consisting of group psychotherapy . . . and other intensive therapeutic services provided by a multidisciplinary team, under the clinical supervision of a mental health professional." Minn.Stat. § 256B.0943, subd. 1(f) (2012). The program's psychotherapy helps attendees develop independent living skills. Lifespan also provides basic education to the program attendees for the school districts, which remain statutorily obligated to educate students who are enrolled in day treatment programs. See Minn.Stat. §§ 125A.15(c), 125A.51(d) (2012).

Because the districts remain responsible for providing education, they typically pay Lifespan for its academic services to students in their districts. The payment obligation is reflected in a one-page document executed for each attending student, entitled, "Special Education Student Acknowledgement and Tuition Agreement." These tuition agreements include information about the student, the student's parents, the institution providing special education services, and the student's resident school district. Near the bottom of each document is a "fiscal responsibility acknowledgement" that states, "The undersigned District of Legal Residence hereby acknowledges fiscal responsibility for the above student's educational costs. It is understood that this district will be billed for special instruction and service costs provided for this student during Fiscal Year ____." A fiscal year is stated for each student. The form document includes a signature block for the "Superintendent/Responsible Authority" to sign and date.

Although an intermediate school district had previously coordinated Lifespan's education services, the intermediate district and Lifespan split in June 2011, and Lifespan began directly employing its own licensed general and special education teachers. This transition allegedly raised the school districts' concerns about the appropriateness of Lifespan's academic

programs. The school districts' special education directors, for example, allegedly became unsure whether Lifespan was complying with state and federal regulations because it is not subject to Minnesota Department of Education oversight. They also claimed that their districts could provide the same educational services more efficiently and economically. Each school district informed Lifespan that it would no longer reimburse Lifespan for educational costs or sign tuition agreements for students who attend Lifespan's treatment program.

The St. Paul district's interim executive director of special education sent a letter to Lifespan on June 20, 2011. She wrote, "As Lifespan is not designated as an [Extended School Year] site, Saint Paul will not sign any tuition agreements or pay any invoices for services beginning after June 14, 2011, through the beginning of the new school year." St. Paul then sent letters to parents with children at Lifespan informing them of this decision.

Similarly, an attorney for the Rosemount–Apple Valley–Eagan district sent a letter to Lifespan on October 13, 2011. She stated,

> District 196 cannot agree to pay the tuition bills it received because it has not placed its resident students in your program, nor has District 196 entered into any arrangement with LifeSpan for LifeSpan to provide educational services.
>
> . . . .
>
> . . . District 196 has the capacity to provide these services itself and for this reason, does not wish for LifeSpan to provide the educational services. Further, based on your recent bills, District 196 can provide the services in a more cost efficient manner.

The district's special education director agreed on November 1, 2011, to pay Lifespan for one student's academic costs. But the district sent another letter to Lifespan in January 2012 reiterating its decision to no longer pay Lifespan's bills.

The Anoka–Hennepin district's special education director notified Lifespan of its termination decision in a letter dated June 7, 2012. She wrote,

> Anoka Hennepin will no longer be accessing or paying for educational services associated with ISD 11 students who are enrolled in LifeSpan's day treatment program.
>
> . . . .
>
> . . . District 11 believes that it is much better equipped to meet the educational needs of our students than our [sic] the existing educational programs at LifeSpan. Further, based on your tuition bills, District 11 can provide these services in a more cost efficient manner.
>
> . . . .
>
> To avoid any confusion in the future with students from the Anoka Hennepin school district that enroll at LifeSpan, please inform them that their resident district is prepared to provide their child's educational program. Furthermore, consistent with your obligations under Minnesota Statute[s], it is our expectation that you will immediately notify District 11 in the event that a resident student from our District is enrolled in your day treatment program.

On July 30, 2012, the Anoka–Hennepin district began sending letters to parents whose children attended Lifespan. The letters, copies of which were also sent to Lifespan, informed the parents of the district's decision to no longer pay for education at Lifespan.

A liaison from the Minneapolis district sent Lifespan a letter dated September 28, 2012. She stated,

With the start of a new school year, this letter is to serve as notice that Minneapolis Public Schools (MPS) will not be contracting with Lifespan to provide education services.

. . . .

We will not be contracting with Lifespan to provide education, therefore we will not be signing the tuition agreements we received.

Despite these notices, Lifespan continued to provide educational services for the Youth Transition Program attendees and sent the bills to their resident school districts. The school districts refused to pay. The dispute's most confrontational incident was a standoff on the first day of school in fall 2011. The St. Paul school district sent buses to Lifespan's campus to remove its students and transport them to another site where the district would instruct them. But Lifespan staff refused to allow the children to board the buses, which left empty.

Lifespan filed complaints against the Minneapolis and Rosemount–Apple Valley–Eagan districts in June 2012, alleging that the districts had breached their contracts by refusing to pay for the educational services Lifespan was providing those districts' students. Lifespan filed similar complaints against the Anoka–Hennepin and St. Paul districts in November 2012, adding that these two school districts had violated statutory protections against deceptive trade practices under Minnesota Statutes section 325D.44 (2012), and that the St. Paul district had committed false advertising, violating Minnesota Statutes section 325F.67 (2012).

All four school districts answered Lifespan's complaints and denied having any duty to pay Lifespan for the amounts allegedly due. They moved for judgment on the pleadings to dismiss Lifespan's contracts claims on jurisdictional grounds, arguing that Lifespan could seek review of their decisions only by filing a writ of certiorari in the court of appeals. The Anoka–Hennepin and St. Paul districts also moved for judgment on the pleadings to dismiss Lifespan's statutory claims on the merits. The district court granted the school districts' motions and dismissed all of Lifespan's claims with prejudice. It concluded that it lacked subject-matter jurisdiction over Lifespan's contract claims and that Lifespan's statutory claims were meritless because the cited statutes do not apply to school districts and because the school districts are immune. Lifespan appeals.

## ISSUES

I. Did the district court have subject-matter jurisdiction over Lifespan's contract claims?

II. Did the district court properly dismiss Lifespan's statutory claims for failure to state a claim upon which relief can be granted?

## ANALYSIS

### I

The district court dismissed Lifespan's contract claims for lack of subject-matter jurisdiction because it deemed those claims to challenge the school districts' quasi-judicial decisions. A party wishing to challenge a municipal decision must choose the right forum. If the municipal decision is legislative, the party can sue in the district court. *Dead Lake Ass'n, Inc. v. Otter Tail Cnty.*, 695 N.W.2d 129, 134 (Minn.2005). But if the decision is quasi-judicial, the district court lacks jurisdiction and a proper challenge begins by a writ of certiorari to the court of appeals. *Cnty. of Wash. v. City of Oak Park Heights*, 818 N.W.2d 533, 539 (Minn. 2012). This distinction respects the consti-

tutional separation of powers. *Id.* at 538. Certiorari is faster and less intrusive than de novo review and therefore more appropriate when courts are asked to analyze quasi-judicial municipal decisions. *Dietz v. Dodge Cnty.,* 487 N.W.2d 237, 239 (Minn. 1992). Municipal bodies exercise executive power, and the limits of certiorari review prevent the judiciary from impermissibly encroaching on those powers. *Cnty. of Wash.,* 818 N.W.2d at 538–39. We apply the same framework to the decisions of school districts. *See Citizens Concerned for Kids v. Yellow Med. E. Indep. Sch. Dist. No. 2190,* 703 N.W.2d 582, 587 (Minn. App.2005) (concluding that certiorari review was unavailable because school district's decision to reassign grades is administrative, not quasi-judicial).

 To help distinguish quasi-judicial decisions (reviewable only on certiorari in the court of appeals) from legislative decisions (reviewable de novo in the district court), the supreme court has identified "three indicia of quasi-judicial actions." *Minn. Ctr. for Envtl. Advocacy v. Metro. Council,* 587 N.W.2d 838, 842 (Minn.1999). They are "(1) investigation into a disputed claim and weighing of evidentiary facts; (2) application of those facts to a prescribed standard; and (3) a binding decision regarding the disputed claim." *Id.* If any of these elements is absent, the decision is not quasi-judicial and must be challenged in the district court. *Citizens Concerned for Kids,* 703 N.W.2d at 585.

In a well written and thoroughly analyzed order, the district court dismissed Lifespan's contract claims because it concluded that they involve quasi-judicial decisions by the school districts and therefore certiorari was Lifespan's exclusive recourse. When dismissal rests on a lack of subject-matter jurisdiction, we review de novo. *Cnty. of Wash.,* 818 N.W.2d at 538. We disagree with the district court's con-

clusion that it lacked subject-matter jurisdiction over Lifespan's contract claims in their entirety. Lifespan partially complained that the school districts improperly failed to pay for services that Lifespan had already rendered and for which the contracts require payment. These are ordinary breach-of-contract claims, like those our appellate courts have considered without any apparent concern about jurisdiction. *See, e.g., Savela v. City of Duluth,* 806 N.W.2d 793, 796–800 (Minn.2011) (determining meaning of phrase in multiple collective-bargaining contracts between city and its employees); *McDonough v. City of Rosemount,* 503 N.W.2d 493, 495–97 (Minn.App.1993) (reviewing summary judgment decision of district court in breach-of-contract dispute between city and landowner), *review denied* (Minn. Sept. 10, 1993).

The discussion in *Dietz* is helpful. In *Dietz,* the supreme court held that certiorari was the sole means for a discharged administrator of a county nursing home to challenge her termination. 487 N.W.2d at 239. The supreme court reasoned that the administrator's claim was "not an ordinary action for failure to perform on a contract for goods or services." *Id.* at 240. Rather, her claim called for the district court to scrutinize how the county had discharged its administrative function, and to do so it would have "run[ ] a grave risk of usurping the county's administrative prerogative." *Id. Dietz* leads us to consider whether this is "an ordinary action for failure to perform on a contract ... for services" or instead an action that directs the district court to scrutinize the school districts' administrative decisions.

 In part, Lifespan's suits challenge the effects of the school districts' decisions to stop working with it, particularly insisting on Lifespan's right to payment under the contracts. Unless a quasi-judicial de-

cision itself is being challenged, certiorari is not required. *See 500, LLC v. City of Minneapolis,* 837 N.W.2d 287, 289 n. 2 (Minn.2013) (holding that district court had subject-matter jurisdiction because party challenged city's *"failure* to render a decision," not a quasi-judicial decision); *see also Meath v. Harmful Substance Comp. Bd.,* 550 N.W.2d 275, 279–80 (Minn. 1996) (holding that board's conduct was not quasi-judicial in part because it was "unenforceable" and decided little). This aspect of Lifespan's suits challenges only the districts' failure to perform by payment, not their decisions about how to educate their students. Resolving Lifespan's contract claims in this regard would involve no second-guessing of the school districts' policy decisions or their decision-making processes. The only issues are whether contracts existed—a fact conceded by the districts—and whether the districts breached their payment duties under them. We hold that the district court had subject-matter jurisdiction over Lifespan's ordinary breach-of-contract claims for nonpayment of the existing contracts for services that Lifespan provided through the dates specified on each contract.

■ But Lifespan's allegations are not limited to its claims that the school districts breached their obligations to pay for services that had been provided under the existing agreements. Lifespan also demands payment for periods extending beyond the contract dates specified in the agreements. It essentially reasons that the districts are bound to continue allowing Lifespan to educate their students who enroll in the treatment program because Lifespan continued to educate them beyond the specified end dates on each agreement. Lifespan's legal theory is difficult to discern. The undisputed facts establish that the school districts could not

have been clearer in communicating their unwillingness to accept Lifespan's future educational services. They sent letters, refused to pay invoices, and stopped signing tuition agreements. If that were not clear enough, one school district even sent a bus to Lifespan's site to retrieve its students and educate them at another location, but Lifespan turned the buses away. Lifespan's complaints imply that the districts are somehow prohibited from ending the Lifespan-district education partnerships because the treatment services continued. The complaints and Lifespan's arguments are not clear as to why this is allegedly so. But it is evident that this aspect of the contract claim challenges the school districts' reasoning, their interpretation of statutes, and their ultimate decisions on who will educate their students. Resolving these issues would require delving into the districts' decision-making. We therefore affirm the district court's decision that it lacked subject-matter jurisdiction over Lifespan's claims to the extent Lifespan asks for damages arising from the education services Lifespan provided after the agreements' termination dates.

**II**

■ The district court also granted the school district's motions for judgment on the pleadings under Minnesota Rule of Civil Procedure 12.03 and dismissed Lifespan's statutory claims arising from letters sent to parents by the Anoka–Hennepin and St. Paul districts. On appeal from judgment on the pleadings, we accept as true and consider only the facts alleged in the complaint and draw all reasonable inferences in the nonmoving party's favor. *Zutz v. Nelson,* 788 N.W.2d 58, 61 (Minn. 2010). "We review de novo whether the complaint sets forth a legally sufficient claim for relief." *Id.* (quotation omitted). The court gave two independent reasons for its judgment on the pleadings: the

statutes relied on by Lifespan do not apply to school districts, and the school districts are absolutely immune from suit for violating those statutes. Lifespan does not contest either of the district court's rationales. Instead, it recites the elements of its claims and asserts that it pled sufficient facts to meet those elements. Because we agree with the district court's statutory interpretation, we affirm its dismissal of Lifespan's statutory claims.

Lifespan's complaints allege that the Anoka–Hennepin and St. Paul districts engaged in deceptive trade practices, violating Minnesota Statutes section 325D.44. Lifespan also asserts that the St. Paul district made a false statement in advertisements, violating Minnesota Statutes section 325F.67. Subdivision 1 of section 325D.44 sets out several acts that constitute a "deceptive trade practice," all of which must be made "in the course of business, vocation, or occupation." Similarly, section 325F.67 regulates advertisements "regarding merchandise, securities, service, or anything so offered to the public, for use, consumption, purchase, or sale."

The district court accurately recognized that these statutes do not apply here. When interpreting statutes, "words and phrases are construed according to rules of grammar and according to their common and approved usage." Minn.Stat. § 645.08(1) (2012). Nothing in these plainly worded commerce-regulating statutes suggests that the legislature intended them to regulate school districts contracting for educational services. And even if this were not so, the school districts' letters to parents and Lifespan employees were neither deceptive trade practices "in the course of business" nor advertisements of services to the public, and so Lifespan does not allege a legally sufficient claim for relief. We therefore affirm the district court's dismissal of Lifespan's statutory claims.

## DECISION

Lifespan's claims based on the districts' breach of their obligation to pay for education services provided before the contracts' specified termination dates would not require the district court to scrutinize the school districts' reasoning or second-guess their policy decisions. The district court therefore has subject-matter jurisdiction over those ordinary contract non-payment claims and we remand the case so they can be litigated. To the extent that the contract claims also allege that the school districts were bound to continue the relationship and to pay for services beyond the periods specified by contract, however, the district court correctly decided that it lacks subject-matter jurisdiction. The district court did not err by dismissing Lifespan's statutory claims.

**Affirmed in part, reversed in part, and remanded.**